In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-1321 and 01-1549

Hartman Brothers Heating & Air Conditioning,
Inc.,

Petitioner/Cross-Respondent,

v.

National Labor Relations Board,

Respondent/Cross-Petitioner,

and

Sheet Metal Workers' International Association,
  Local Union No. 20,

Intervening Respondent.

Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board

Argued October 25, 2001--Decided February 6, 2002


   Before Bauer, Posner, and Evans, Circuit
Judges.

   Posner, Circuit Judge.  "Salting" is the practice whereby a union inserts its organizers into some employer's workforce in the hope that they will be able to organize it. Though salts do not intend to remain in the company's employ after the plant or other facility is organized, the Supreme Court has held that they are employees within the meaning of the National Labor Relations Act, implying that to fire or refuse to hire otherwise qualified salts merely because they are salts is an unfair labor practice because on the assumption that they are qualified the employer's motive must be the forbidden one of discriminating against employees on the basis of their being union supporters. NLRB v. Town & Country Electric, Inc., 516 U.S. 85, 87 (1995). In the present case, a small heating and air-conditioning contractor in rural Indiana "sent home" one salt (Starnes) before discharging him on proper grounds and refused to hire another (Till), and the Labor Board found that these actions

were improperly motivated by hostility to unionizing. Besides ordering the company to cease and desist from discriminating against salts and other union supporters, the Board ordered it to give backpay to Starnes and Till and offer reinstatement to Till, the exact amount of backpay for each salt to be determined in subsequent proceedings.

Doubtless to conceal the fact that he was a salt, Starnes stated on his job application that he had been laid off by a previous employer from a job paying $11 an hour, when in truth he had taken a leave of absence from that employer in order to participate in the union's organizing efforts. Hartman was only offering about $8.50 an hour, so had Starnes disclosed that he had taken a leave of absence from a much better paying job the company might have smelled a rat--for why would someone do that unless he was a salt? (There are reasons, such as a spouse's relocation, but the possibility of such reasons might not be enough to dispel the employer's suspicion.) In the case of Till, the com pany smelled a rat right off because he had applied for the job in the company of a known union organizer, declared he was a union organizer, and worn a baseball cap with the union's logo on it. The company did not offer Till a job, but it did hire Starnes--who, however, immediately upon being hired, told Mr. Hartman himself that he was a union organizer and intended to organize the company, whereupon Hartman told him to leave the workplace, though he did not discharge him--yet.

Starnes's action in proclaiming his union-organizer status before doing any organizing supports the widespread suspicion that the purpose of salting is not in fact to organize, but to precipitate the commission of unfair labor practices by startled employers, Starcon, Inc. v. NLRB, 176 F.3d 948, 949 (7th Cir. 1999); Chairman's Summary of Committee Activity for the 104th Congress, S. Rep. No. 105-63, 105th Cong., 1st Sess. 29-30 (1997); Herbert R. Northrup, "'Salting' the Contractors' Labor Force: Construction Unions Organizing With NLRB Assistance," 14 J. Lab. Research 469, 471-73 (1993); Note, "Organizing Worth Its Salt: TheProtected Status of Paid Union Organizers," 108

Harv. L. Rev. 1341, 1345-46 (1995); Kathleen Sheil Scheidt, Comment, "National Labor Relations Board v. Town & Country Electric, Inc.: Allowing a Trojan Horse to Trample Employer Rights," 24 J. Corporation Law 89, 90-91 (1998), though to what ultimate end is unclear; the alleged unfair labor practices in this case occurred in 1995, and six years later the Hartman company is still not unionized. But all this is neither here nor there, as the Supreme Court has made clear that the Labor Board can condone salting and the Board has done so.

The question presented by this case, left open in Town & Country, is whether a salt may lie to get a job. (The salt in Beverly California Corp. v. NLRB, 227 F.3d 817, 833-34 (7th Cir. 2000), had lied, but we made nothing of this fact.) We think that he may, at least if the lie concerns merely his status as a salt, union organizer, or union supporter and not his qualifications for the job. Cf. Frazier Industrial Co. v. NLRB, 213 F.3d 750, 760 (D.C. Cir. 2000). A lie about his union status or unionizing objective is not material, because, as Town & Country held, an employer cannot turn down a job applicant just because he's a salt or other type of union organizer or supporter. In other words, the fact that the applicant is a salt does not entitle the employer to infer that he won't be a bona fide employee. An employer still may insist that every employee do eight hours' work for eight hours' pay; and if a particular employee diverts time to other activities (rather than promoting the union on his own time), the employer is not required to keep him on the payroll. Disclosure of one's status as a salt thus may be important information that an employer is entitled to so that it can keep an eye on a worker whose allegiance implies that he will not do full-time work. But this argument against allowing a salt to lie his way into a job is not made in this case, so we shall not try to decide its merit, which may moreover depend on the precise type of job--the less a worker is supervised, the more important his undivided loyalty to the firm is.

Hartman points to an Indiana statute that makes it a crime for a person to "knowingly or intentionally make[ ] a false or misleading written statement

with intent to obtain . . . employment,"
Ind. Code sec. 35-43-5-3(a)(2), an apt
description of Starnes's job application.
But if interpreted to entitle an employer
to turn down a job application on the
basis of a lie about salt status, the
statute would be preempted by the
National Labor Relations Act because it
would interfere with union organizing
activity without any justification
consistent with the Act. As we have said,
a lie related solely to one's union
affiliation or unionizing intentions
rather than to one's fitness for the job
cannot, consistent with the Act as it was
interpreted in Town & Country, be
material to the hiring decision. (The
Indiana statute contains no requirement
of proving materiality.) The only purpose
of criminalizing such a lie could be to
discourage salting, an activity protected
by the Act.

What we have said so far shows that the
Board was entitled to find that the
company had committed an unfair labor
practice and to order the company to
offer Till reinstatement (actually
"instatement," since Till had not been
hired) and give him backpay. Starnes's
situation is more complicated. The job
for which the company hired him required
driving and so the company had told him
that its liability insurer would be
checking his driving record and if upon
checking the insurance company refused to
provide insurance coverage for his
driving, he would be discharged. A few
hours after Starnes had been ordered off
the premises, the insurance company
report came through; it was negative; and
Starnes--who had misrepresented his
driving record, stating that he had only
one speeding ticket (he had two)--was
immediately discharged. The Board ruled
that the discharge was proper because it
was done pursuant to a company policy
that was applied across the board and
thus without regard to an employee's
attitude toward unions. That is why the
Board didn't order Hartman to offer
reinstatement to Starnes, as opposed to
Till.

But the Board did order the company to
pay Starnes backpay, albeit limited to
the few hours between his hiring and his
termination, the hours after he was
ordered off the premises and before he
was formally terminated upon Hartman's

receipt of the report from the insurance company. Hartman challenges this award, and as the issue is not one of computation of backpay, which has beenreserved to compliance proceedings pursuant to Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 902 (1984), it is properly raised by the company's petition to review the Board's order.

The Board has applied the maxim de minimis non curat lex quite frequently, most recently in In re Golden Stevedoring Co., 335 N.L.R.B. No. 37, 2001 WL 1033831, at *6 (NLRB Aug. 27, 2001), and Robert Orr-Sysco Food Services & Teamsters Local 480, 334 N.L.R.B. No. 122, 2001 WL 910764, at *2 (NLRB Aug. 7, 2001), and we should have thought this a prime case for its application. See NLRB v. General Truck Drivers, Warehousemen, Helpers & Automotive Employees of Contra Costa County, Local No. 315, 20 F.3d 1017, 1022 (9th Cir. 1994); NLRB v. Big Three Industrial Gas & Equipment Co., 441 F.2d 774, 778 (5th Cir. 1971). It is true (or so at least we were told at argument without contradiction) that salts are permitted to retain the wages they receive from the employers that they salt, rather than having to remit those wages to the union, which pays salts generous salaries--in the range of $30,000 to $40,000, we were told--for their part-time organizing work. But Hartman paid Starnes for 4 hours of work even though he was at work for only 15 minutes; so even if the insurance company's report on his driving record came through at the very end of an 8-hour day, the most Starnes could have lost in backpay would have been $34 ($8.50 x 4). It is hard to believe that soaking Hartman for this amount could have a deterrent effect justifying the expenditure of government funds necessary to determine and collect the exact amount owed.

Hartman's argument, however, is not that; instead it is that the backpay order exceeded the Board's authority because the complaint against the company--the complaint, filed by the Board's General Counsel, that commenced the unfair labor practice proceeding before the Board and thus corresponds to the initial pleading (also called the complaint) that commences a lawsuit in federal district court-- charges that the

company committed an unfair labor practice by discharging Starnes, whereas the unfair labor practice proved was sending him home, thus depriving him of an opportunity to begin organizing and, incidentally, earn some wages on top of his union salary. Although Labor Board proceedings are not graced with pretrial orders, making the complaint a more important stage in those proceedings than in federal district court proceedings, we cannot think of any reason to hold the Board to the letter of the complaint unless there is prejudice to the employer or to whoever else is the respondent in the proceeding. Complaints are based on preliminary investigations, and the trial may cast the facts in a different light. To require that the complaint be amended to conform the pleadings to the facts proved, even if the discrepancy is harmless, would be to complicate these proceedings to no purpose. There was no prejudice here, since the question of the company's motive in sending Starnes home before it fired him was fully ventilated in the evidentiary hearing on the complaint. The Board was therefore entitled to proceed as it did, basing judgment on facts proved though not alleged. NLRB v. Quality C.A.T.V., Inc., 824 F.2d 542, 545-46 (7th Cir. 1987); Electri-Flex Co. v. NLRB, 570 F.2d 1327, 1335 (7th Cir. 1978); Tasty Baking Co. v. NLRB, 254 F.3d 114, 122 (D.C. Cir. 2001).

Hartman also argues, however, though unclearly, that the award of backpay to Starnes violates the rule that while the purpose of awarding backpay to employees victimized by an employer's hostility to unionization is deterrent as well as compensatory, Kraszewski v. State Farm General Ins. Co., 912 F.2d 1182, 1186 (9th Cir. 1990); Hedstrom Co. v. NLRB, 629 F.2d 305, 317 (3d Cir. 1980) (en banc), the award is limited to replacing wages that the employee would have earned had it not been for that hostility. Sure-Tan, Inc. v. NLRB, supra, 467 U.S. at 900-01; NLRB v. J.S. Alberici Construction Co., 591 F.2d 463, 470 (8th Cir. 1979); NLRB v. Martin A. Gleason, Inc., 534 F.2d 466, 479 (2d Cir. 1976). Starnes obtained employment by a fraud concerning his driving record. Had he told the truth he would not have been hired and so he would not have accrued any wages and therefore would not have been eligible for any award of backpay

even if the employer had committed an unfair labor practice.

This argument is defeated by the Supreme Court's rejection in McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 360-62 (1995), of the "after-acquired evidence" doctrine. Developed in lower courts before McKennon, the doctrine holds that there is no right to backpay if in the course of litigation over a discriminatory or otherwise unlawful discharge the employer unearths evidence that, had he known it at the outset, would have caused him, without fault, to refuse to hire the employee. See, e.g., Washington v. Lake County, 969 F.2d 250, 252-53 (7th Cir. 1992); Milligan-Jensen v. Michigan Technological University, 975 F.2d 302, 303-05 (6th Cir. 1992); Summers v. State Farm Mutual Automobile Insurance Co., 864 F.2d 700, 708 (10th Cir. 1988). For the application of McKennon to lying on a job application, see Sheehan v. Donlen Corp., 173 F.3d 1039, 1047-48 (7th Cir. 1999); Wallace v. Dunn Construction Co., 62 F.3d 374, 378-79 (11th Cir. 1995) (en banc), and for its application to an unfair labor practices case where, as in this case, the employee concealed a disqualifying condition, see Hoffman Plastic Compounds, Inc. v. NLRB, 237 F.3d 639, 648-49 (D.C. Cir. 2001) (en banc), cert. granted, 122 S. Ct. 23 (2001).

It is true that unlike the defendant in McKennon or in the other cases that we have cited, Hartman did not discover Starnes's disqualification by combing through discovery materials. He discovered it in the regular course of processing the application, by routine inquiry of his liability insurance company made and completed within hours of Starnes's beginning work--indeed, so far as appears, at the earliest feasible opportunity. This is not a case in which "the information might have gone undiscovered absent the suit," McKennon v. Nashville Banner Publishing Co., supra, 513 U.S. at 362, in which event barring backpay might give employers an incentive to dig for dirt in the litigation process in order to deter suits. The Court stated that the "concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is

not an insubstantial one." Id. at 363. There can be no basis for such a concern here. In McKennon itself the disqualifying condition was discovered at the deposition of the plaintiff.

But McKennon cuts deeper. The real basis of the "after-acquired evidence" doctrine was not, as it might seem, that there can be no award of backpay unless the employee would have obtained wages had it not been for the employer's unlawful act. That principle is entirely sound. It is the principle that forbids an award if the plaintiff would have been fired even if the employer had not been anti-union, see, e.g., NLRB v. Martin A. Gleason, Inc., supra, 534 F.2d at 479, and that subtends the part of the after-acquired evidence doctrine preserved by McKennon, the part terminating the accrual of backpay as soon as the employer obtains evidence that because it shows that the employee is disqualified on noninvidious grounds, permits the employer to terminate the employee at that point. McKennon v. Nashville Banner Publishing Co., supra, 513 U.S. at 362. Both are situations in which the causal relation between the unlawful conduct and the employee's termination is severed. Had the Board awarded backpay to Starnes for any period after the company learned of his driving record, the cases that we have cited would require us to invalidate the award. But if the company had not been motivated by hostility to salts, it would not have sent Starnes home until it learned of his driving record; it would have paid him up to that point; and it would have made no attempt to get the money back. Cf. Sheehan v. Donlen Corp., supra, 173 F.3d at 1047-48. The version of the after-acquired evidence doctrine that would have barred an award of backpay for this period before McKennon despite the absence of a causal connection between the employee's resume fraud or other false statement and his termination was really just the old "unclean hands" defense of equity. See McKennon v. Nashville Banner Publishing Co., supra, 513 U.S. at 360; Hoffman Plastic Compounds, Inc. v. NLRB, supra, 237 F.3d at 648-49. The Court rejected the application of the doctrine "where Congress authorizes broad equitable relief to serve important national policies," McKennon v. Nashville Banner Publishing Co., supra, 513 U.S. at 360,

citing the rejection of the doctrine's application to antitrust in Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 138 (1968). There is no basis for distinguishing in this respect between the antitrust and age-discrimination laws (McKennon was an-age-discrimination case) on the one hand and the National Labor Relations Act on the other. See Hoffman Plastic Compounds, Inc. v. NLRB, supra.

The Board's order is

Enforced.