**Kenneth O'NEAL, Plaintiff–Appellant,**

v.

**CITY OF NEW ALBANY, et al., Defendants–Appellees.**

No. 00–3091.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 2001.

Decided June 14, 2002.

Rehearing Denied July 22, 2002.

Donald L. Cox (argued), Lynch, Cox, Gilman & Mahan, Louisville, KY, for Plaintiff-Appellant.

Karen R. Goodwell, Mattox & Mattox, New Albany, IN, for Defendant-Appellees.

Before FLAUM, Chief Judge, and BAUER, and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

Kenneth O'Neal sued the City of New Albany, Indiana, its police merit commission, and the local police pension board for racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1983, and for violating the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(d). The magistrate judge, handling the case with the parties' consent, granted summary judgment for the defendants on all counts. We affirm the judgment with respect to O'Neal's ADA claim, but because O'Neal is entitled to a trial on his race discrimination claims, we vacate in part and remand the case to the district court for further proceedings.

## I. BACKGROUND

O'Neal, who is African–American, has been trying to become a New Albany police officer for nearly twenty years. He first applied in 1983, when he was 25 years old. The city rejected his application, and he reapplied the next year. This time the police merit commission placed him on its list of eligible candidates. The commission ranked O'Neal sixth on the list, and the city hired two white applicants. O'Neal then filed charges of race discrimination against the city with the EEOC, claiming that less-qualified white candidates were ranked above him on the eligibility list. The EEOC found probable cause to believe that the city's hiring practices indeed discriminated against African–Americans.

O'Neal received a notice of right to sue, which he did in 1990. The parties settled this suit in October 1995.

In December 1993, while his suit was pending, O'Neal applied to become a New Albany police officer for the third time. He was 35 years old. Shortly thereafter, O'Neal passed a written examination and was interviewed by three members of the merit commission. No positions were available until early 1995, but when a position opened up, the city again hired a white applicant. In 1996, partly as a response to O'Neal's lawsuit, the commission adopted an affirmative action hiring plan that created two eligibility lists, one for all applicants and another for minority applicants. The merit commission alternated in selecting the top person from each list as positions became available. O'Neal was ranked third on the minority list, and by the time a position opened up later that year, the top two individuals had dropped out making O'Neal the number-one candidate. By then, however, O'Neal was 38 years old. Nevertheless, a merit commission representative called O'Neal to confirm that he was still interested in the job. O'Neal said that he was, and so the commission informed the chief of police, Mathie Anderson, that O'Neal was the top candidate. Police captain Mike Mills then arranged for O'Neal to take a medical examination that is required by the Public Employees Retirement Fund, or PERF. PERF administers the 1977 Police Officers and Firefighters Pension and Disability Fund, in which all new New Albany police officers must participate. Chief Anderson and Captain Mills are members of the local police pension board.

Dr. Howard Pope, an independent physician who performs medical examinations for the local pension board, examined O'Neal in February 1997. Several weeks later, O'Neal was told that he had "flunked" the medical examination because of heart problems. O'Neal then went to see his cardiologist, who wrote Dr. Pope a letter stating that O'Neal's heart was in good condition and that his high blood pressure was well-controlled with medication. O'Neal also underwent a treadmill stress test, which showed normal cardiac functioning. After receiving this information, Dr. Pope concluded that O'Neal did not suffer from coronary disease. Nonetheless, Dr. Pope refused to certify O'Neal as having passed the examination without additional medical tests that would have cost O'Neal $1,500. O'Neal did not have these tests performed, and Anderson and Mills refused to forward O'Neal's medical information to PERF for approval. O'Neal complained to the merit commission but was told that nothing could be done; it was up to Dr. Pope and the local pension board. His information was never sent to PERF for approval, and as a result, the city did not hire him. No one told O'Neal that his information was not being forwarded to PERF because he now was over 36 years old.

In May 1997 O'Neal filed charges of race and disability discrimination against the city with the EEOC. After receiving a right-to-sue letter, O'Neal filed suit in federal district court claiming that the defendants discriminated against him on the basis of race and that their medical examination violated the ADA.[1] He seeks make-whole relief of back and front pay, damages for his mental suffering, and an injunction preventing future discrimination and instating him as a New Albany police officer with seniority. The parties consented to have the case heard by a magis-

---

1. O'Neal also brought this suit on behalf of a 75–member class. The magistrate judge concluded that O'Neal made no showing that his action was appropriate as a class action, and O'Neal does not appeal that ruling.

trate judge under 28 U.S.C. § 636(c). The magistrate judge granted summary judgment in favor of the defendants, concluding that O'Neal could not make out a prima facie case of race discrimination because his age disqualified him from employment as a police officer in Indiana. The magistrate judge concluded that O'Neal's ADA claim likewise failed because he could not prove that any injury resulted from the medical examination. O'Neal moved to vacate the judgment under Federal Rule of Civil Procedure 59(e). The magistrate judge denied that motion, and O'Neal appeals.

## II. ANALYSIS

We review a grant of summary judgment *de novo*, viewing all the facts and inferences in a light most favorable to the nonmoving party. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 731 (7th Cir.2001). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Generally, if the plaintiff presents evidence from which an inference of discrimination could be drawn, summary judgment is improper and a trial is required. *Fuka v. Thomson Consumer Elec.*, 82 F.3d 1397, 1402 (7th Cir.1996).

### A. Race Discrimination Claims

 Under Title VII, as well as § 1981, race discrimination can be proved by direct or indirect evidence. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir.1999). O'Neal lacks direct proof of discrimination, and so he relies on the indirect, burden-shifting approach delineated by the Supreme Court in *McDon-*

*nell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this approach, O'Neal must first make out a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he applied and was qualified for the position sought; (3) he was rejected; and (4) the position remained open and the city continued to seek applicants. *See id.* at 802, 93 S.Ct. 1817. To withstand summary judgment on the prima facie case, O'Neal need only show that there is a genuine issue of material fact regarding these elements. *See Stalter v. Wal–Mart Stores, Inc.*, 195 F.3d 285, 289 (7th Cir.1999).

 The parties do not dispute that O'Neal satisfied the first, third, and fourth elements. But the defendants contend that the magistrate judge correctly concluded that O'Neal failed to establish the second prong. In so holding, the magistrate judge relied on Indiana Code § 36–8–4–7(a), which provides that a "person may not be appointed as a member of the police department or fire department after the person has reached thirty-six (36) years of age." O'Neal had turned 36 by the time any positions were available, and so, the magistrate judge reasoned, O'Neal could not prove that he was qualified for the job. We disagree. An employer may still be liable for race discrimination under Title VII even though it later discovers information that would have otherwise disqualified the plaintiff from employment. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 356–60, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). In *McKennon*, the Court held that evidence of an employee's misconduct that would have led to her termination, but was not discovered until after she was fired and litigation ensued, did not bar the employee's age discrimination claim; rather, such after-acquired evidence merely affected her remedy. *Id.* at

359–60, 115 S.Ct. 879; *Venters v. City of Delphi,* 123 F.3d 956, 974 (7th Cir.1997). The Court explained that private litigants who seek redress for their injuries vindicate Title VII's objective of eliminating discrimination in the workplace. That purpose, the Court stated, would not be served if an employer was free to discriminate against an employee just because it later learned of some wrongdoing. *McKennon,* 513 U.S. at 358, 115 S.Ct. 879. Likewise, after-acquired evidence that an employee misrepresented her qualifications in a job application or resume does not bar the employee's discrimination claim. *See Sheehan v. Donlen Corp.,* 173 F.3d 1039, 1047–48 (7th Cir.1999); *Wallace v. Dunn Constr. Co., Inc.,* 62 F.3d 374, 379 (11th Cir.1995).

Similarly, O'Neal's race discrimination claim would not be barred by the defendants' belated recognition that they could not have hired him because of his age. During the early 1990's, the merit commission suspended its maximum age policy in part because an exemption to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* that permitted state and local governments to apply maximum hiring ages for police officers expired in 1993. Although Congress restored this exemption in 1996 and made it retroactive to 1993, *see* 29 U.S.C. § 623(j); *Kopec v. City of Elmhurst,* 193 F.3d 894, 898 (7th Cir. 1999), the city did not reinstitute its maximum age policy until late 1998, long after O'Neal says the defendants rejected him for employment and nine months after his lawsuit was filed. Accordingly, the merit commission kept O'Neal on its eligibility list after he turned 36 and, according to defendants, even offered O'Neal the job conditioned only on his passing the medical examination. A merit commission member testified that O'Neal's age was never discussed because "we were operating under the assumption that we could not require age." And although the defendants assert

that "[c]learly, the age issue was raised well before the lawsuit was filed," they have submitted no evidence to support this assertion. We agree with O'Neal that there is at least a genuine issue of material fact as to whether, despite the Indiana maximum hiring age statute, the defendants considered his age to be a disqualifying factor when they decided not to hire him. Thus, the magistrate judge erred in concluding that O'Neal could not make out a prima facie case of race discrimination on account of his age.

Moreover, although the Indiana maximum hiring age statute certainly would affect the damages O'Neal can obtain if he prevails, it does not leave him without a remedy. The magistrate judge was correct that O'Neal probably cannot now be instated as a New Albany police officer, *see McKennon,* 513 U.S. at 361–62, 115 S.Ct. 879, but Title VII provides for more than instatement as a remedy for those who suffer race discrimination. O'Neal may still be entitled to some back pay. *See id.* at 362, 115 S.Ct. 879; *Hartman Bros. Heating and Air Conditioning, Inc. v. NLRB,* 280 F.3d 1110, 1114–16 (7th Cir.2002). He also may be entitled to compensation for the humiliation and emotional distress he says that he suffered as a result of the defendants' discriminatory actions. *See* 42 U.S.C. § 1981a. We have held that employment "testers" who experience discrimination may sue for damages under Title VII even though they were not genuinely interested in the job applied for and, at least in that sense, were not harmed by the employer's refusal to hire them. *Kyles v. J.K. Guardian Sec. Servs., Inc.,* 222 F.3d 289, 298–99 (7th Cir.2000). That the testers had no interest in actually working for the company, we said, "speaks to the nature and extent of their injuries as well the appropriate relief," but "does not rule out the prospect that they *were* injured. We have long recognized that

humiliation, embarrassment, and like injuries ... constitute cognizable and compensable harms stemming from discrimination." *Id.* at 300 (emphasis in original). Likewise, O'Neal may be able to show that he suffered harm from the defendants' refusal to hire him on the basis of his race even if Indiana's maximum hiring age statute would have ultimately voided his hiring.

The defendants also assert that O'Neal was not qualified because Dr. Pope did not certify him as having passed the medical examination. Indeed, in order for the merit commission to appoint him as a New Albany police officer O'Neal had to be approved by PERF, and in order to be approved by PERF, he had to be certified by a physician as having met certain baseline medical standards for police officers. O'Neal, however, vigorously disputes Dr. Pope's conclusion that his health did not satisfy those standards. O'Neal points to the letters from his own doctors stating that his heart was normal and his high blood pressure was well-controlled. In support of his claim that he in fact was fully capable of performing a police officer's duties, O'Neal submitted a report from a doctor who gives physical examinations for the Louisville, Kentucky police department. The doctor examined O'Neal and found that he was physically qualified to work as a police officer. *See Holiday v. City of Chattanooga*, 206 F.3d 637, 644–45 (6th Cir.2000) (evidence showing that HIV-positive applicant was able to perform functions of a police officer, including evidence that he successfully passed a similar police physical, created a question of fact as to applicant's qualifications in ADA case). Such evidence at least creates a disputed question of fact as to whether O'Neal was physically qualified, and thus we conclude that O'Neal has satisfied his burden on the prima facie case.

The burden therefore shifts to the defendants to articulate a legitimate, nondiscriminatory reason for not hiring O'Neal. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. As set forth above, the defendants have asserted two such reasons: that O'Neal was never certified as having passed the medical examination and that he was over Indiana's maximum hiring age for police officers. These reasons are at least "facially legitimate," *see Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir.1999), and so the burden shifts back to O'Neal to show that they were a "pretext" for discrimination, *see McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817. "Pretext in this context means a lie, specifically a phony reason for some action." *Vakharia*, 190 F.3d at 807 (internal quotations omitted). O'Neal may establish pretext with evidence that the defendants were more likely than not motivated by a discriminatory reason or that their explanations are not worthy of credence, i.e., they are factually baseless, did not actually motivate the defendants, or were insufficient to motivate the adverse employment action. *See id.* "Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment." *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir.1995); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

First, O'Neal attacks the defendants' age justification as not truly motivating their decision not to hire him. We have held that when an employer gives one reason at the time of the adverse employ-

ment decision but later gives another which is unsupported by the documentary evidence, a jury could reasonably conclude that the new reason was a pretextual, after-the-fact justification. *Stalter*, 195 F.3d at 291; *Emmel v. Coca–Cola Bottling Co. of Chicago*, 95 F.3d 627, 634–35 (7th Cir. 1996); *Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 456 (7th Cir.1991). In May 1997, O'Neal was told that his information would not be sent to PERF for approval because he had not passed the medical examination to Dr. Pope's satisfaction. Now, however, the defendants assert that O'Neal's information also was not sent to PERF because O'Neal was over Indiana's maximum hiring age for police officers, and so PERF would not accept him. True, O'Neal was too old under the Indiana statute. But "[w]hen a plausible reason was in fact the reason, it is pretextual." *Emmel*, 95 F.3d at 634. No one informed O'Neal that his age was another reason his application was not being forwarded to PERF. There are no contemporaneous documents discussing O'Neal's age. To the contrary, the documentary evidence shows that the city did not begin applying the maximum hiring age until late 1998. Chief Anderson and Captain Mills assert that they did not forward O'Neal's application to PERF because of O'Neal's age, but neither one provides any time frame for this alleged decision. For instance, Captain Mills says that he "learned that PERF would not accept applicants to the 1977 fund who were age of 36 or over," but he does not say *when* he learned this fact. Moreover, Chief Anderson contradicted himself in his deposition by acknowledging that if Dr. Pope had passed O'Neal, he would have sent O'Neal's application to PERF for approval regardless of his age because it was up to PERF—and not the local pension board—whether to accept or reject O'Neal. We agree with O'Neal that a reasonable jury could conclude that the defendants' after-the-fact age justification was pretextual.

Second, O'Neal challenges the credibility of the defendants' original assertion that his information was not sent to PERF for approval because he had not been certified as passing the medical examination. The medical examination, according to defendants, had a two-fold purpose: to determine whether an applicant passes the baseline statewide medical examination; and if so, to assess whether she has any pre-existing "excludable conditions" for purposes of disability benefits. But an applicant need only pass the baseline statewide medical examination to be approved by PERF for membership in the 1977 fund. *See* Ind.Code § 36–8–8–7(a). In addition, if the applicant with the highest score on the eligibility list passes the baseline statewide medical examination, as well as any applicable local physical and mental requirements, and is still of "good character," then the "applicant shall then be enrolled as a member of the department." Ind.Code § 36–8–3.5–12. Here, the record demonstrates that Dr. Pope had concluded that O'Neal *passed* the baseline statewide medical examination, and the defendants knew it. Dr. Pope checked the "no" box next to each baseline condition listed in O'Neal's 1977 fund application and signed that page of the form. Dr. Pope also signed a certification qualifying O'Neal to attend recruit school, which stated "as a result of my physical examination, I have determined that this patient can safely participate in all types of vigorous physical activities." These documents were provided to Chief Anderson and Captain Mills. Indeed, Captain Mills, who is also the secretary of the local pension board, signed a certification stating that O'Neal "passes the local physical and mental standards, if any, established by the appointing authority for the department . . . and has been determined to meet

physical requirements to be a member of the department after being tested using the baseline statewide physical examination."

Nonetheless, Anderson and Mills refused to send O'Neal's information to PERF because, they say, additional medical tests were required. O'Neal contends that these additional tests were just a ruse. Specifically, he argues that the "excludable conditions" identified by Dr. Pope as requiring additional testing, i.e., ear wax, gingivitis, possible urinary tract disease, and a lesion on his penis, had nothing to do with the baseline medical examination or his ability to perform the duties of a police officer. Significantly, the defendants do not assert that any of these conditions would in fact affect his ability to perform as a police officer. Dr. Pope acknowledged that the conditions he identified would probably not impact O'Neal's ability to be a police officer. Nor did Dr. Pope or any of the officials involved in the city's hiring process identify any physical aspect of the job that O'Neal could not perform. Chief Anderson testified that two other applicants were required to take additional medical tests before Dr. Pope would certify them as having passed the medical examination, but those applicants had conditions affecting their vision and hearing, which are baseline conditions. Notably, O'Neal is the only applicant ever to have failed the medical examination.

Based on the above, O'Neal has presented sufficient evidence to cast doubt on the truthfulness of the defendants' proffered reasons for not forwarding his application to PERF. Because a trier of fact could reasonably infer from this evidence that the defendants' proffered reasons for rejecting O'Neal were a pretext for discrimination, we conclude that summary judgment was inappropriate and remand this case for trial. Accordingly, we need not address O'Neal's argument that the magis-trate judge also erred by rejecting his statistical evidence of racial disparities on summary judgment.

## B. Americans with Disabilities Act Claim

Title I of the ADA forbids employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). O'Neal does not assert that he has a disability but contends that he nevertheless has standing to sue under the ADA for the defendants' violations of the ADA's provisions limiting preemployment medical testing, 42 U.S.C. § 12112(d)(2) and (3). We have not yet addressed the question of whether a nondisabled plaintiff can sue for violations of those provisions. Several of our sister circuits, however, have held that in general a plaintiff need not show disability to sue for medical testing violations under § 12112(d). *See Cossette v. Minn. Power & Light*, 188 F.3d 964, 969 (8th Cir.1999); *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1181–82 (9th Cir. 1999); *Griffin v. Steeltek, Inc.*, 160 F.3d 591, 593–95 (10th Cir.1998). Other circuits have declined to address the question. *See Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 516–17 (3d Cir.2001); *Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 558 (5th Cir.1998).

In all of these cases, however, the courts have required that a nondisabled plaintiff *at least* show some tangible injury-in-fact caused by the § 12112(d) violation. *See, e.g., Tice*, 247 F.3d at 519–20. Here, the defendants state that one of the reasons they did not hire O'Neal is because he did

not pass the medical examination to Dr. Pope's satisfaction. The magistrate judge nevertheless concluded that O'Neal could not show any injury because he "could not legally have been hired at the time of the exam" because of his age. We disagree with the magistrate judge on this point for the same reasons we concluded that O'Neal's age did not bar his race discrimination claims. As the Supreme Court has explained, "proving that the same decision would have been justified ... is not the same as proving that the same decision would have been made." *McKennon*, 513 U.S. at 360, 115 S.Ct. 879 (internal quotations and citations omitted). As we concluded in part II.A., *supra*, a reasonable jury could conclude that O'Neal's age had nothing to do with the defendants' decision not to hire him. Thus, although the age issue would limit the remedy O'Neal could obtain for any ADA violations, he would not be barred from all relief if he were to prevail.

 O'Neal's ADA claim does not prevail on summary judgment, however, because he has not shown any ADA violation. O'Neal primarily argues that the defendants' medical examination was impermissible because it was not narrowly tailored to his ability to perform as a police officer; rather, it was a comprehensive examination intended to illicit information regarding any disabling impairments. Section 12112(d)(2) prohibits preemployment medical examinations or inquiries unless they are focused on the ability of the applicant to perform job-related functions. *See* 42 U.S.C. § 12112(d)(2); 29 C.F.R. § 1630.14(a). But once an employer has made an offer of employment to an applicant, the employer "may require a medical examination ... and may condition an offer of employment on the results." 42 U.S.C. § 12112(d)(3). A post-offer examination does not have to be job-related. *See* 29 C.F.R. § 1630.14(b)(3).

The defendants argue that their examination was a post-offer medical examination. When O'Neal arrived for the exam, Captain Mills gave him a form entitled "Conditional Offer of Employment Statement of Understanding" along with the 1977 fund application materials. O'Neal does not dispute that he signed this statement, in which he acknowledged that:

> I, Kenneth O'Neal, a candidate for a police officer position on the police department have received a conditional offer of employment for that position. I understand that the offer is conditional on my successfully passing the statewide baseline medical examination and the statewide mental examination, as well as any local medical and mental examination requirements. If I do not pass these examinations and requirements, the offer of employment will be withdrawn.

 O'Neal contends that this offer was not a "real" one. For purposes of § 12112(d)(3), "a job offer is real if the employer has evaluated all relevant non-medical information that it reasonably could have obtained and analyzed prior to giving the offer." *Downs v. Mass. Bay Transp. Auth.*, 13 F.Supp.2d 130, 138 (D.Mass.1998) (quoting ADA Enforcement Guidance: Preemployment Disability–Related Questions and Medical Examinations (EEOC Oct. 10, 1995), *reprinted in* EEOC Compl. Man. (CCH) ¶ 6903, at 5371, 5378). "This requirement is intended to ensure that an applicant's possible hidden disability (including a prior history of a disability) is not considered before the employer evaluates an applicant's non-medical qualifications." *Id.* (internal quotations omitted). Accordingly, if a job offer is conditioned not only on the applicant successfully passing a medical examination but also a myriad of non-medical screening tests, the offer is not real. *Buchanan v. City of San Antonio*, 85 F.3d 196, 199 (5th

Cir.1996). In this case, unlike in *Buchanan*, O'Neal does not dispute that he had already successfully completed all of the city's non-medical screening tests, including a written examination, personal interview, a polygraph test, a psychological examination, and a background investigation. O'Neal merely points out that the statement of understanding reflects that his offer also was conditioned on his passing a statewide mental examination and "any local medical or mental examination requirements." But these additional medical tests do not render the offer insufficient under § 12112(d)(3). Indeed, under § 12112(d)(2), the defendants probably could not have required O'Neal to take them until after they gave him the conditional offer. Thus, even viewed in a light most favorable to O'Neal, the facts do not show that the defendants violated the ADA by failing to extend him a "real" offer of employment before requiring him to take the medical examination.

■ Accordingly, the defendants could lawfully require the medical examination—and condition the offer on the results—as long as they satisfied the three requirements set forth in § 12112(d)(3):

(A) all entering employees are subjected to such an examination regardless of disability;

(B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, ... and;

(C) the results of such examination are used only in accordance with this subchapter.

42 U.S.C. § 12112(d)(3). O'Neal does not dispute that all future New Albany police officers are given the same PERF medical examination. O'Neal, however, contends that the defendants failed to satisfy the second and third requirements. First, he

claims that Dr. Pope's disclosure of his medical examination results to Chief Anderson and Captain Mills violated his right to confidentiality. But such a disclosure was contemplated by § 12112(d)(3), given that the statute permits employers to condition a job offer on the results of a medical examination. Accordingly, the EEOC has stated that "[m]edical information may be given to—and used by—appropriate decision-makers involved in the hiring process so they can make employment decisions consistent with the ADA." ADA Enforcement Guidance: Preemployment Disability–Related Questions and Medical Examinations (EEOC Oct. 10, 1995), *reprinted in* EEOC Compl. Man. (CCH) ¶ 6903, at 5380. Although not binding on this court, such administrative interpretations "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav'g Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *see also Kyles*, 222 F.3d at 299. The EEOC guidance also provides that "the employer may only share the medical information with individuals involved in the hiring process ... who need to know the information." EEOC Compl. Man. (CCH) ¶ 6903, at 5380. Because Chief Anderson and Captain Mills also were members of the local pension board, and the local pension board was to certify O'Neal's examination results before sending them to PERF for approval, they needed to know those results. O'Neal does not allege that his medical information was provided to anyone else in the police department or that it was disseminated to anyone outside of the police department. Even taking the facts in a light most favorable to O'Neal, he has not shown that the defendants improperly disclosed his medical records.

■ Second, O'Neal maintains that the defendants violated the statute by rejecting him from employment based on condi-

tions identified by Dr. Pope that are wholly unrelated to his ability to perform as a police officer. The defendants have not attempted to show that the conditions Dr. Pope identified would have prevented O'Neal from doing the job. But they have not violated the ADA by failing to do so. Under § 12112(d)(3)(C), an employer may reject an applicant based on medical examination results as long as those results are "used only in accordance with this subchapter." 42 U.S.C. § 12112(d)(3)(C). To demonstrate that the defendants failed to use his medical examination results "in accordance with this subchapter," i.e., Title I of the ADA, O'Neal must show that the defendants used the results to discriminate against him on the basis of a disability. *See* 42 U.S.C. § 12112(a); *see also Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 960 n. 4 (10th Cir.2002) ("[T]o recover under subsection 12112(d)(3)(C) a plaintiff must show the employer used collected medical information to discriminate on the basis of a disablity."); 29 C.F.R. § 1630.14(b)(3) ("[I]f certain criteria are used to screen out *an employee or employees with disabilities* as a result of such an examination or inquiry, the exclusionary criteria must be job-related and consistent with business necessity, and performance of the essential job functions cannot be accomplished with reasonable accommodation.") (emphasis added). O'Neal concedes that he does not have a

disability; nor does he argue that the defendants regarded him as having one. He therefore has not shown that the defendants used his medical examination results in violation of the ADA, and we affirm the magistrate judge's grant of summary judgment on his ADA claim.[2]

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the magistrate judge on O'Neal's ADA claim, and VACATE the judgment and REMAND the case for a trial on his race discrimination claims. O'Neal shall recover his costs of appeal.

---

**2.** As we noted earlier, *supra,* several of our sister circuits have held that job applicants who are subjected to illegal medical examinations or disclosures, and who are in fact injured thereby, may bring a cause of action against the offending employer under the ADA even though they are not disabled. The Tenth Circuit reasoned, "[i]f we were to require individuals to make a showing of disability as part of a prima facie § 12112(d)(2) case, we would in effect be making individuals with disabilities identify themselves as disabled to prevent potential employers from inquiring whether they have a disability."

*Griffin,* 160 F.3d at 594. Here, unlike in *Griffin* or its progeny, we are faced with a permissible post-offer medical inquiry. We believe that § 12112(d)(3) is unambiguous in that regard: an employer may reject an applicant based on the results of a post-offer medical examination as long as the employer does not discriminate on the basis of the applicant's disability. If the applicant is not disabled, or makes no showing that the employer regarded her as disabled, then the applicant cannot recover under § 12112(d)(3)(C).