**M. Bazlul KARIM, Plaintiff–Appellant,**

v.

**BOARD OF TRUSTEES OF WESTERN ILLINOIS UNIVERSITY, Defendant–Appellee.**

No. 02–2220.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 2002.

Decided Dec. 5, 2002.

**856**

Before POSNER, COFFEY, and MANION, Circuit Judges.

ORDER

M. Bazlul Karim brought this action under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, against the Board of Trustees of Western Illinois University ("Western"), alleging that Western discriminated against him on the basis of age and national origin when it failed to interview and then hire him for a teaching position. The magistrate judge, handling the case with the parties' consent, granted summary judgment for Western on both claims. On appeal Karim challenges only the magistrate judge's ruling on his national origin claim, and we affirm.

Karim, a native of Bangladesh, began studying geography, economics, and sociology in the late 1960's. He currently holds two master's degrees in geography (Western Illinois University and Dhaka University in Bangladesh), one master's degree in international studies–an interdisciplinary degree that includes classes in international relations, geography, sociology, and anthropology (University of Denver)–and a doctorate in international studies (University of Denver). After teaching for four years at another college, from fall 1994 to spring 1998. Karim taught at Western on a part-time basis, where he received favorable student evaluations for political science courses including "Introduction to Political Science," "Introduction to Comparative Government and Politics," "Political Systems of Asia." and "Politics and Development in the Third World." Over the years. Karim published several books and articles on Bangladeshi topics, including a study of rural households and the country's social structure, and received several awards for service to the Association of Third World Studies, Inc.

In fall 1997, while Karim was teaching at Western, the Political Science Department began a candidate search for a temporary Comparative (Asian) Politics instructor, and Karim applied. According to an affidavit by Dr. Charles Helm, the Political Science Department chair, the new instructor would focus on Asian politics, but also would teach courses in American government, introductory politics, and Third World politics. Although no copy of the position advertisement appears in the record, Karim admitted in his deposition that the department preferred someone who held a Ph.D., but would consider. candidates who had completed their Ph.D. classes and were still working on their dissertation (otherwise known as an "ABD," meaning all but dissertation). In a memo dated March 23, 1998, Dr. Jutta

Helm, the Political Science Department Personnel Committee chair, informed the department faculty that after reviewing 37 applications, the selection committee decided to interview two candidates: Fiona Yap, a native of Singapore, and Himadeep Muppidi, a native of India. Once the interviews were completed, Dr. Helm informed her colleagues that the faculty would decide among three voting options: postpone the candidate search, offer the position to Yap, or offer the position to Muppidi. Of the nine ballots returned, four votes supported Yap, three votes favored Muppidi, and two write-in votes proposed offering the position to Karim. After Yap and Muppidi successively turned the position down, three additional candidates were interviewed, and in May 1998 Western eventually hired Dongpin Han, who was ABD but expected to receive his Ph.D. shortly. Han, a native of China, was writing his dissertation on the Chinese Cultural Revolution.

During the hiring process, Dr. A.B. Villanueva, a friend of Karim and member of the selection committee, lobbied for Karim to be hired on the basis that he had received two write-in votes. But the selection committee never interviewed Karim. In affidavits submitted in support of summary judgment, the other four committee members stated that they believed Karim was not qualified for the position. For instance, Aimee Shouse, whose position at Western is not clear, stated that Karim's Ph.D. in international studies did not provide sufficient training in comparative politics, and therefore did not qualify him to teach the subject. Dr. Jutta Helm agreed, and added that Karim's education and writing focused more on economics than politics. Dr. Charles Helm also agreed that Karim's Ph.D. in international studies and his expertise about Bangladesh did not qualify him for a position specializing in Asian politics that focused more generally on China. India. and Japan; according to

Helm. Han had more suitable training for the Asian politics position. The final committee member, Dr. John Shockley, declined to support Karim based on his observations of Karim's in-class teaching style; Shockley believed that Karim tended to overemphasize rote memorization of dates without any discussion of context and political theory.

Karim sued Western for age discrimination under the ADEA and national origin discrimination under Title VII. Western moved for summary judgment, arguing it had a legitimate, non-discriminatory reason for not hiring Karim–that he did not have a degree in political science and was not experienced in Asian politics. The magistrate judge granted summary judgment for Western, reasoning that Karim failed to establish a prima facie case of age discrimination because he did not demonstrate a significant age difference between himself and Han (Karim was born in 1949; Han in 1955). With respect to Karim's national origin discrimination claim, the magistrate judge assumed without deciding that Karim established a prima facie case, but determined that Karim failed to show that Western's reason for not hiring him was pretextual.

On appeal, Karim abandons his ADEA claim and argues that the magistrate judge erred in granting summary judgment on his national origin claim because he raised issues of fact regarding whether Western's proffered reasons were a pretext for discrimination. This court reviews a grant of summary judgment *de novo* and views the facts in the light most favorable to the non-moving party. *O'Neal v. City of New Albany*, 293 F.3d 998, 1003 (7th Cir.2002). Summary judgment is not appropriate if the plaintiff presents evidence from which it can be inferred that the defendant discriminated against him. *Id.*

Karim primarily argues that Western's proffered reason is pretextual because he is just as qualified as, if not more qualified than, Han because he has three master's degrees and a doctorate, whereas Han was ABD. But when a plaintiff seeks to prevent summary judgment based on the strength of a discrepancy in qualifications, his qualifications must be so superior to the selected candidate's qualifications that a reasonable, impartial person could determine that the plaintiff was clearly better qualified for the position. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180–81 (7th Cir.2002). A plaintiff cannot show pretext merely by demonstrating that the defendant improperly evaluated his credentials, so long as the defendant honestly believed the evaluation. *Id.* at 1175.

By highlighting the fact that he completed his doctorate and that Han was ABD, Karim glosses over the explanations of three committee members who believed that Karim's multiple degrees in geography and international studies (unlike Han's specialization in China) did not qualify him for the position teaching Asian politics. But even assuming that Karim was better qualified than Han, his credentials were not clearly superior, and therefore a reasonable employer could have concluded that Han was the better person for the job.

Karim also seeks to demonstrate pretext by asserting that the four committee members who opposed his candidacy could not have honestly believed that he was not qualified for the position. He argues that other individuals with Ph.D.s in international studies teach political science courses, as evidenced by a letter from the University of Denver listing the current teaching positions of its graduates in political science departments around the world. Karim also provides a compilation of his student evaluations to demonstrate the positive reviews that he had received when he taught an Asian politics course at West-

ern. But this evidence does not prove that the committee members did not honestly believe that Karim was not qualified for the position. *See Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir.2000) (noting that a plaintiff must show forbidden criteria resulted in low evaluations). At best, the evidence demonstrates that Dr. C. Helm, Dr. J. Helm, and Shouse may have incorrectly viewed Karim's qualifications, but as long as their reasons were not forbidden ones, his pretext argument fails.

Karim next argues alleged statements by Drs. J. Helm and Shockley reflect national origin bias against him and therefore show pretext. Specifically, Karim alleged that in fall 1994, J. Helm asked him if he had anything to do with the 1993 World Trade Center bombing, and again in April 1995, asked if he was involved with the 1995 Oklahoma City bombing. Karim also alleged that, in September 1992, Shockley recommended to him that he return to Bangladesh so that he would be happier. These alleged statements, however, hardly suggest pretext; they were made years before the April 1998 employment decision and in no way are they causally related to that decision. *See Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 910 (7th Cir.2002) (finding statements made as little as two months before the employment action not temporally related).

Finally, Karim argues that Western's inconsistent use of faculty votes in its faculty selection process demonstrates pretext. But this argument is undeveloped – Karim provides no concrete evidence other than his own deposition testimony for these assertions. Thus, Karim's assertions are insufficient to cast doubt on Western's proffered legitimate, nondiscriminatory reasons for not hiring him.

AFFIRMED.