**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted May 1, 2009[*]
Decided May 1, 2009

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No.  08-3028

| | |
|---|---|
| MARLON LLEWELLYN, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:07-cv-339-LJM-JMS |
| CAMPBELL SALES CO., *Defendants-Appellees*. | Larry J. McKinney, *Judge*. |

**O R D E R**

Campbell Sales Company fired Marlon Llewellyn from his position as Territory Manager for the Indianapolis area after he led police on a high-speed chase while driving a company-owned car.  In response, Llewellyn sued the company, alleging that he was fired

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* FED. R. APP. P. 34(a)(2).

in violation of the Americans with Disabilities Act (ADA) because he suffered from depression.[1]  The district court granted summary judgment in favor of Campbell.  Llewellyn now appeals and we affirm.

We begin by recounting the facts in the light most favorable to Llewellyn.  *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009).  Llewellyn began working for Campbell, a subsidiary of Campbell Soup, in June 2003.  His job required him to monitor more than 400 stores in the Indianapolis area to confirm that the stores properly displayed and sold Campbell products.  Campbell therefore provided Llewellyn with a Chrysler Sebring for use in driving from store to store.  As a condition of his employment, Llewellyn agreed in writing to comply with the company's Vehicle Use Agreement and its Corporate Fleet Safety Policy.  Those documents prohibited all employees from driving company cars while physically or mentally impaired; they also required drivers to obey motor vehicle laws.  Finally, the Safety Policy warned employees that they could be disciplined or fired if they used a company car to commit a crime or otherwise violated Campbell's motor vehicle policy.

In May 2005, while driving the company-owned Sebring, Llewellyn suffered what he calls a "blackout"—an episode in which he did not lose consciousness but apparently lost memory of his actions for several hours.  During this episode, Llewellyn waved a gun at other motorists and then led police on a high-speed chase along I-65.  The chase abruptly ended when he crashed the Sebring into a truck.  After being taken to a hospital, where Llewellyn says he regained his memory, he was arrested and charged with resisting law enforcement as well as a number of traffic violations (the charges were later dismissed).  Llewellyn believes that the episode was triggered by depression, a condition he was diagnosed with several weeks earlier.

Shortly thereafter, Tammy Brockman, a Campbell human resources representative, read a newspaper article describing the chase and spoke with Llewellyn about the incident.  Llewellyn explained that he had "blacked out" and could not account for the chase.  Brockman informed Llewellyn that he was suspended without pay pending a complete investigation of the crash.  A week later, Campbell placed Llewellyn on short-term disability leave, where he remained until Campbell fired him in October 2005.  In her letter informing Llewellyn that he had been fired, human resources manager Kimberly Eby stated that the reason for his termination was that the chase and crash violated company policy.

---

[1]There is some suggestion in the record that Llewellyn suffers not from depression but from bipolar disorder.  Because in his brief Llewellyn characterizes his illness as depression, we do the same.

Llewellyn then filed the present suit, claiming that Campbell's real motive for firing him was his depression, and not its stated reason—that he violated company policy by leading police on a high-speed chase and crashing the company's car. The district court eventually granted summary judgment for Campbell. The court first found that Llewellyn had failed to establish a prima facie case of discrimination because, among other reasons, he had not shown that he was meeting Campbell's legitimate employment expectations. And even if Llewellyn could make out a prima facie case, the court added, he could not show that Campbell fired him for a reason other than the crash.

On appeal Llewellyn argues that his work performance was satisfactory enough to support a prima facie case and that Campbell lied about its reason for firing him. As with such arguments, the legitimate-expectations prong of the prima facie case and the pretext question seem to merge because the issue is the same—whether the employer is lying. *Lloyd*, 552 F.3d at 603; *Hague v. Thompson Dist. Co.*, 436 F.3d 816, 822-23 (7th Cir. 2006). Llewellyn argues that Eby and Brockman lied when they said that his depression was not their real reason for firing him. According to Llewellyn, Campbell knew of his condition (because he took short-term disability leave and because his therapist faxed a letter to Campbell describing his symptoms) and that knowledge is enough to create a question regarding whether Eby and Brockman fired him because of his depression. That Campbell knew Llewellyn suffered from depression, however, is not enough to demonstrate pretext. Pretext means that the employer's stated reason for an adverse employment action is a lie. *See Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006); *Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003); *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). Even if Campbell knew of Llewellyn's depression, he still has not shown that the violation of company policy was not Campbell's real reasons for firing him. Llewellyn testified in a deposition that he knew of no facts that would suggest that Campbell fired him for a reason other than the chase and crash. Moreover, Eby submitted a sworn declaration asserting that she fired Llewellyn because he violated company policy and was therefore not meeting Campbell's employment expectations. Viewing the evidence in the light most favorable to Llewellyn, a reasonable jury could not find on this record that Llewellyn's work performance met Campbell's legitimate expectations or that the company lied about its motive for firing him. *See Yindee*, 458 F.3d at 603.

AFFIRMED.