In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1513

Karla J. Markel,

Plaintiff-Appellant,

v.

Board of Regents of the University
of Wisconsin System,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00 C 254--Barbara B. Crabb, Chief Judge.

Argued December 4, 2001--Decided January 3, 2002

  Before Bauer, Posner, and Easterbrook,
Circuit Judges.

  Bauer, Circuit Judge.  From October 1998 through June 1999, Karla Markel was employed on a fixed-term nine month contract by the University of Wisconsin Learning Innovations. A month prior to the end of Markel's contract she was dismissed from her position, but she was still paid in full until her contract expired. Markel later filed a complaint in the Western District of Wisconsin claiming that she was discriminated against on the basis of her gender, in violation of the Civil Rights Acts of 1964, as amended, 42 U.S.C. sec. 2000 et seq., and that she was paid less than her male counterparts for the same work, in violation of the Equal Pay Act of 1963, 29 U.S.C. sec. 206(d). The University of Wisconsin moved for summary judgment on both claims, and the district court granted the motion finding there was no genuine issue of material fact and that summary judgment was warranted as a matter of law. Markel filed a timely appeal with this court, and after briefing and oral argument we conclude that the district court correctly granted summary judgment and affirm.

BACKGROUND

The University of Wisconsin Learning Innovations (UWLI) is a division of the University of Wisconsin Extension. The mission of the Extension is to promote various University programs and resources to the citizens of Wisconsin not enrolled in the University. Karla Markel was hired by UWLI pursuant to a nine month fixed-term contract, which was to run from October 1998 until June 1999. The contract did not provide for renewal and disavowed any right to notice of nonrenewal. Included with the contract was a non-compete clause and an agreement not to disclose any proprietary information. As part of UWLI, which provided web-based services to corporations and governmental entities, her job duties included developing sales of web-based services to health care organizations. Markel was to receive a 3.5% bonus based on gross revenues generated, if certain conditions were met. Markel's supervisors were Michael Offerman, the Dean and Director of UWLI, and Philip LaForge, Marketing Manager.

In April 1999, Offerman and LaForge were informed that Markel, Richard Schafer, and Jeffery Sledge were involved with a competing company, called Learning W@rks, and were trying to recruit UWLI employees to staff it. A meeting occurred at a restaurant among the employees, supposedly to recruit John Ashley and discuss business strategy. Offerman, together with LaForge and Holly Breitkreutz, Associate Dean & Director of UWLI, went to the restaurant and saw four employees there, seated together. After the meeting, when Ashley returned to the office, Offerman confronted him. Ashley told Offerman the business plan and gave him some documents from the new business.

It seems that the employees intended to take advantage of Schafer's connection, through his wife, to an existing enterprise called Leadership Online, which performed services similar to that of UWLI. They also planned to use Sledge's involvement with a nonprofit company called Learning Works Group. Learning Works Group, because of its connections to former University regents, appeared to be affiliated with the University. Apparently, Leadership Online was supposed to take over Learning Works Group and use some of its' name recognition and inferred associations

with the University to attract business.

In May 1999, armed with this information, Offerman and Breitkreutz confronted Markel. They asked Markel about her involvement with Learning W@rks, and gave her written notice of the charges of dismissal and a chance to respond. Offerman told her that in order to avoid dismissal she needed to either write out and sign a statement outlining what she knew about the new business or resign. Markel refused to sign a statement and said she would need to consult with an attorney before answering Offerman's questions. The meeting ended, and Markel was forced to cease work immediately and return all UWLI property. However, the next step in the process to terminate Markel was not taken, and she was paid in full until the end of her contract on June 30, 1999. Markel later filed an appeal of the dismissal and requested a hearing, but because her contract had already ended and it was nonrenewable, Offerman withdrew the dismissal charges.

ANALYSIS

We review a district court's grant of summary judgment de novo, to determine if there is a genuine issue of material fact that would necessitate a trial. Griffin v. City of Milwaukee, 74 F.3d 824, 826-27 (7th Cir. 1996). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The facts are viewed in a light most favorable to the nonmoving party and all reasonable inferences are drawn in favor of the nonmoving party. In the employment discrimination context, summary judgment is warranted where "the evidence, interpreted favorably to the plaintiff, could [not] persuade a reasonable jury that the employer had discriminated against the plaintiff." Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1570 (7th Cir. 1989).

A.  Gender Discrimination Claim

A plaintiff in an employment discrimination action may prove discrimination either through direct evidence or indirect evidence, using the

McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), burden shifting approach. See Randle v. LaSalle Telecom., Inc., 876 F.2d 563, 565-69 (7th Cir. 1989). In either case, the burden is on the plaintiff to demonstrate genuine issues exist for trial. Griffin, 74 F.3d at 827.

### 1. Direct Discrimination

As she did in the district court, Markel contends that several statements attributed to Offerman and LaForge are evidence of direct discrimination. Offerman, LaForge, and the University deny that the statements were ever made. At oral argument the University contended that these statements are more appropriately considered performance related, and even if they are believed, show an aversion toward age not gender. Either way, the statements are not worth repeating because they fail to show direct discrimination. In order to arrive at the conclusion Markel would have us reach, we would need to infer discriminatory animus into the statements, which we cannot do. See Randle, 876 F.2d at 569-70 (holding that "direct evidence, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption") (emphasis added). Moreover, the statements were claimed to have been made between November 1998 and March 1999, and Markel was removed from her position nearly two months later in May 1999. Therefore, these statements were not made contemporaneously to the adverse employment action as required by our case law. See id.; Conley v. Vill. of Bedford Park, 215 F.3d 703, 711 (7th Cir. 2000) ("'To rise to the level of direct evidence of discrimination, this Court has stated that isolated comments must be contemporaneous with the [adverse action] or causally related to the [applicable] decision-making process.'") (citations omitted); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1089 (7th Cir. 2000). The district court properly found Markel failed to demonstrate any potential claim of direct discrimination.

### 2. Indirect Discrimination

Under the McDonnell-Douglas burden shifting approach, in order to establish a prima facie case for gender discrimination, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was performing her job to her employer's legitimate expectations; (3) that in spite of her meeting the legitimate expectations of her employer, she suffered an adverse employment action; and (4) that she was treated less favorably than similarly situated male employees. See, e.g., Bragg v. Navistar Int'l Transp. Corp., 164 F.3d 373, 376 (7th Cir. 1998); Randle, 876 F.2d at 570-71.

Markel meets the first prong of the test because she is a member of a protected class. However, the district court found that Markel did not meet the second prong because she violated the non-compete clause in her contract. Thus, the district court did not reach the third prong of the test. Nevertheless, on appeal, Markel used a considerable portion of her brief to contend that she suffered an adverse employment action. This is an interesting legal question be cause Markel was not technically dismissed from her job; she was paid in full until the end of her contract, and her contract was nonrenewable. Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998) ("A tangible employment action in most cases inflicts direct economic harm."); Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago, 104 F.3d 1004, 1014-15 (7th Cir. 1997) (suspension and suspension pending termination); Hunt v. City of Markham, Illinois, 219 F.3d 649, 654-55 (7th Cir. 2000) (denial of a raise); Ribando v. United Airlines, Inc., 200 F.3d 507, 511 (7th Cir. 1999) (denial of a promotion). Markel could be considered to have been constructively discharged, though not in the traditional sense, or suspended pending termination. See Tutman v. WBBM-TV, Inc./CBS, Inc., 209 F.3d 1044, 1050 (7th Cir. 2000) (a constructive discharge normally occurs where an employer drives the employee to quit by making working conditions miserable); Hunt-Golliday, 104 F.3d at 1014-15. Even though a resolution of this issue might create some new insights in this area of the law, we need

not reach it because of Markel's failure to meet the second part of the test.

Markel also complains that she was treated adversely because she was denied "better" equipment, the ability to travel and make presentations, and removed from certain accounts that caused her not to receive bonuses. Even if believed, these complaints do not amount to actionableadverse employment actions. "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996); see also Stutler v. Illinois Dept. of Corr., 263 F.3d 698, 702-03 (7th Cir. 2001) (holding that "a lateral transfer without a loss in benefits does not constitute an adverse employment action."); Fyfe v. City of Fort Wayne, 241 F.3d 597, 602 (7th Cir. 2001) (holding that denial of a request for reimbursement for travel expenses did not constitute an adverse employment action); Murray v. Chicago Transit Authority, 252 F.3d 880, 887-88 (7th Cir. 2001) (same); Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1006 (7th Cir. 2000) (holding that denial of a bonus was not an adverse employment action); Place v. Abbott Lab., 215 F.3d 803, 810 (7th Cir. 2000) (holding that the loss of a telephone and cubicle were "too trivial to amount to an adverse employment action"); Conley, 215 F.3d at 712 (requiring village maintenance worker plaintiff to paint water department pump room was not an adverse employment action). When combined with other actions, differences in office aesthetics between employees might aid the plaintiff in showing discriminatory treatment, however, standing alone they are not readily quantifiable losses Title VII was meant to redress. See, e.g., Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997) (noting that "the loss of these services [office and telephone], standing alone, has never been held adverse action." (citing Collins v. State of Illinois, 830 F.2d 692, 703-04 (7th Cir. 1987))).

Markel contends she was terminated because of her gender, and that her contract was "renewable on an annual basis." In order to stave off summary judgment a fact would need to be in

dispute and material to the case. As we have stated before, "[a] party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture." Palucki, 879 F.2d at 1572. The facts show that another enterprise called Learning W@rks was formed, and that Markel had lunch with several other employees of UWLI to discuss job opportunities. Markel was only confronted after management collected information and documents regarding this enterprise, and after she was observed at the meeting by her supervisors. Additionally, if Markel's assertion of pretext is correct, there was absolutely no reason for UWLI to also terminate Schafer, who was also supposedly involved with Learning W@rks. Yet, Schafer was terminated and other employees who did not cooperate were disciplined. As to Markel's argument that her contract was renewable, the documents contained in her own appendix clearly establish that her contract "did not provide for any term of renewal," and her "appointment [was] for the above-stated period only and renewal [was] not intended."

Markel's counsel also filed an affidavit purporting to be that of Jeffery Sledge. Though this affidavit adds no evidence beneficial to Markel's case, its unusual nature calls for a momentary digression. Pursuant to Rule 56(e) affidavits are only to be "made on personal knowledge." Fed. R. Civ. P. 56(e). Put another way, affidavits "must show that the affiant is competent to testify to the matters at hand, and must contain facts that would be admissible in evidence." Rhine v. Loyola Univ. Chicago, 1998 WL 456550 at *2 (N.D. Ill. July 31, 1998); Thompson v. Exposition Serv., 2001 WL 321998 at *1 (N.D. Ill. April 2, 2001); New Hampshire Ins. Co. v. Farmer Boy AG, Inc., 2000 WL 33125128 at *5 (S.D. Ind. Dec. 19, 2000); cf. Palucki, 879 F.2d at 1572. Jeffery Sledge's affidavit was not sworn to or certified, and it was not signed by him, it was signed by Alan Olson, counsel for Markel. This affidavit should not, and indeed cannot, be considered as evidence because it fails to meet the requirements of Rule 56(e). See Vanni v. City of New York, 1988 WL 1956 at *10 (E.D.N.Y. Jan. 5, 1988).

After our own review of the facts, we

find that the district court correctly concluded that summary judgment was warranted because no issues of material facts were in dispute.

B.  Unequal Pay Claim

To demonstrate a prima facie case for a violation of the Equal Pay Act, a plaintiff must establish: "(1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions." Fallon v. State of Illinois, 882 F.2d 1206, 1208-09 (7th Cir. 1989). The plaintiff would have to show that the jobs compared are substantially equal, "based upon 'actual job performance and content--not job titles, classifications or descriptions.'" EEOC v. Mercy Hosp. and Med. Ctr., 709 F.2d 1195, 1197 (7th Cir. 1983) (citations omitted). After a plaintiff has demonstrated a prima facie case, the employer may respond with affirmative defenses to show the pay differential is due to: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." Fallon, 882 F.2d at 1211.

Markel compared her position to that of Brent Parks and Richard Schafer, both of whom were paid more than Markel. Thus, the first part of the test was met, and we move on to consider the second and third parts. Parks was a consultant who did not receive benefits, and there was no evidence demonstrating he performed work that was substantially equal to Markel's work. Schafer, however, was part of the marketing team and was an account manager like Markel. Thus, Markel demonstrated a prima facie case as to the pay disparity between her and Schafer.

The burden then shifted to the University to explain the pay disparity. The University explained that Schafer was justifiably paid more than Markel based on the number of years he had worked for the University and the fact he had been a program director. The district court found that these reasons showed the pay disparity was based on factors "other than sex." In their affidavits, Markel and Schafer averred that there were no

grounds, other than sex, for the pay disparities between Markel, Parks, and Schafer. However, apart from their bald assertions there is no evidence to support these contentions. Parks and Markel were not substantially equal, and there was a legitimate reason not based on sex for Schafer's higher compensation. See Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1462 (7th Cir. 1994) ("The factor need not be 'related to the requirements of the particular position in question,' nor must it even be business-related.") (citations omitted).

Markel further asserts that Schafer was not entitled to notice prior to termination and severance pay. The University demonstrated and district court found that because of his length of tenure at UWLI, Schafer was entitled to notice under the applicable administrative code. Our reading of the code comports with that of the district court, and Markel never provided any evidence to contradict this basic reading of the text. Based on the applicable rules, UWLI was required to give notice and severance pay to Schafer, but was not required to do so for Markel.


CONCLUSION

Applying the relevant legal principles to the facts of this case led us to the same conclusion as the district court: no reasonable jury could find that the employer discriminated against the plaintiff. Affirmed.