**Tracey LUST, Plaintiff,**

v.

**SEALY, INC., Defendant.**

**No. 02–C–50–C.**

United States District Court, W.D. Wisconsin.

Dec. 30, 2002.

Robert J. Gingras, Madison, WI, for Plaintiff.

Lauri D. Morris, Quarles & Brady, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary relief brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Equal Pay Act, 29 U.S.C. § 206(d). Plaintiff Tracey Lust contends that defendant Sealy, Inc. discriminated against her on the basis of sex when it failed to give her a promotion and paid her less than male employees who did the same work. Jurisdiction is present under 28 U.S.C. § 1331.

Presently before the court is defendant's motion for summary judgment on both claims. I conclude that plaintiff has established a prima facie case under Title VII and demonstrated that there is a genuine issue of material fact whether defendant's articulated reasons for not promoting her in summer 2000 are pretexts for discrimination. Therefore, I will deny defendant's motion for summary judgment with respect to plaintiff's claim under Title VII. However, because I conclude that plaintiff has not established a prima facie case under the Equal Pay Act, I will grant defendant's motion for summary judgment with respect to that claim.

Before setting forth the undisputed facts, I note that plaintiff filed a motion to strike defendant's motion for summary judgment in October because defendant failed to timely file proposed findings of fact. Several days later, Magistrate Judge Joseph Skupniewitz granted defendant's motion to amend its summary judgment materials to include its proposed findings of fact. To the extent that ruling was unclear, I state expressly now that plaintiff's motion to strike is denied.

From the parties' proposed findings of fact and the record, I find the following facts are material and undisputed.

## UNDISPUTED FACTS

### A. *Plaintiff's History with Defendant*

Defendant Sealy, Inc. is a manufacturer and distributor of mattresses and box springs. Defendant hired plaintiff Tracey Lust in 1992 as a retail coordinator in Madison, Wisconsin. After approximately one year with defendant, plaintiff was promoted to territory manager 1 and given a raise. As a territory manager 1, plaintiff received her own sales territory in southern Wisconsin, which included about 50 accounts, most which ranged from $7,000 to $10,000 in sales. She had responsibility for advertising and promoting her accounts, merchandising, ordering product and conducting sales training in her territory.

Scott Penters, a district sales manager, became plaintiff's supervisor in 1995. District sales managers are responsible for the day-to-day management of sales staff within the district. In November 1995, plaintiff was promoted to territory manager 2 and received a 25% salary increase. Penters announced plaintiff's promotion. Plaintiff kept all the accounts she had with the exception of one and she acquired the account for Bedtimes, which was worth approximately $400,000 at the time. Plaintiff was not required to relocate for her promotions.

While a territory manager 2, plaintiff was assigned Steinhafel's, a new account. No other accounts were taken away from plaintiff. Steinhafel's was a $1 million account when plaintiff acquired it and plaintiff's largest. By summer 2000, the Steinhafel's account had grown to at least $1.8 million in sales.

In April 1998, Alfred Boulden became regional vice president of sales in plaintiff's region. Seven district sales managers reported directly to Boulden, including Penters.

Plaintiff wanted to be promoted to key account manager. According to defendant's 2000 position description, a "key account manager" "[d]evelops and executes a sales and profit plan for one or more major accounts, establishing priorities and adapting merchandising, promotion and advertising programs to each account's circumstances to enhance Sealy's leadership position in the market." The description provides that a key account manager's net sales should vary between $3 million and $25 million. The position requires three years of experience as a territory manager 2 or completion of the Sealy training program plus ten years of selling experience. A bachelor's degree in marketing or business is preferred. Key account managers are the most experienced sales representatives.

Plaintiff told Penters on numerous occasions that she wanted to become a key account manager. She also told Penters that she needed to know what was required of her to obtain the promotion. Penters tried to keep plaintiff informed of the requirements for key account managers and let her know if there were any changes in the position description.

As early as 1997, Penters began his effort to help plaintiff become a key account manager because plaintiff was demonstrating her ability to manage large accounts, merchandise, set advertising programs and perform sales training. In 1998 and 1999, Penters told Boulden several times that plaintiff was interested in being a key account manager and he recommended to Boulden that plaintiff receive the promotion shortly after Boulden became regional vice president of sales in plaintiff's region. At the time, Boulden disagreed with the recommendation. In a memo dated September 30, 1999, Penters again recommended to Boulden that plaintiff receive a promotion

to key account manager. Penters cited plaintiff's volume performance, numerous awards and long history with the company as reasons for recommending plaintiff's promotion. He also noted that plaintiff had "developed strong relationships with buyers/owners and key operations personnel." Penters wrote that plaintiff "has consistently performed at the Key Account Manager" level. In Penters's view, plaintiff had been performing at the key account manager level for 6–8 months before the September memo. Penters discussed his recommendation orally with Boulden as well.

Boulden made the decision whether to promote a territory manager 2 to a key account manager. However, because Boulden spent little time with territory managers (Boulden met with plaintiff in her market twice in two years), he relied on district sales managers to make promotion recommendations. Penters made recommendations for promotion decisions of employees in his sales district. Typically, a recommendation would include sales achievement, advertising successes, sales training successes and general performance observations. In some cases, seniority was considered in making the promotion decision. For example, if two candidates were equal in their talents, seniority could be the determining factor.

In December 1999, plaintiff completed a relocation chart for defendant. The chart lists the names of districts in which defendant is located. Employees are asked to indicate on the chart their willingness to relocate to each district. The letter "A" indicates the employee's first choice, "B" is second choice, "C" is third choice and "X" means the employee is not willing to move to that location. Plaintiff indicated that her first choices were Chicago and Arizona and that she was unwilling to move to 16 of the 20 districts. Boulden relied on this chart in determining that plaintiff was reluctant to be relocated for a promotion.

In summer 2000, a key account manager position became available in Chicago, Illinois. Plaintiff had been on Penters's list of potential candidates for this position initially, but he took her off the list early in the decision process. Penters did not ask plaintiff whether she would be willing to relocate either to become a key account manager or take the Chicago position and he never recommended to Boulden that plaintiff receive the promotion in Chicago. If he had, it might have made a difference to whom Boulden gave the account. Boulden never seriously considered plaintiff for the position. Defendant gave the position to Steve West, another territory manager 2.

## B. *Plaintiff's Performance Record*

Plaintiff has a college degree in education. In summer 2000, she had been with defendant eight years and had been a territory manager 2 for five years. As of November 30, 1997, plaintiff's projected annual sales totaled approximately $4,200,000. In 1998, plaintiff's projected annual sales were approximately $4,750,000. In 1999, her projected sales were approximately $4,900,000. In 2000, her projected sales were approximately $5,800,000. Plaintiff received numerous awards for her sales. Plaintiff received raises each year from 1997 to 2000: 5.86% in 1997, 8.51% in 1998, 3.92% in 1999 and 5.66% in 2000.

In 1996, Penters gave plaintiff an evaluation of "far exceeds," which is the top rating. In years after 1996, Penters gave plaintiff a "commendable" rating, the second highest. In December 1999, Penters indicated in plaintiff's evaluation that she could be promoted "one level up."

In spring 1999, Boulden and Penters met with Gary Steinhafel, who told them that he believed that plaintiff and Cathy

Luling, Steinhafel's buyer, did not have a strong personal relationship and that Luling "didn't particularly like" plaintiff. In addition, Steinhafel said that many of his salespeople "were not warming up to" plaintiff. Steinhafel was asked whether he wanted a different representative, but he said he did not because he viewed positively some of plaintiff's attributes that Luling did not like. By the end of 1999, Steinhafel told Boulden and Penters that plaintiff was performing well and that she had overcome her interpersonal problems.

In August 1999, Penters evaluated plaintiff's performance for the previous year. Among his comments Penters wrote, "Tracey has remained very strong with the buyers and sales associates. She works well with the owners, but needs to spend a bit more time developing their needs and cultivating the relationship with the Steinhafels Buyer." In the space for employee comments, plaintiff wrote, "I will continue to grow my relationship at Steinhafels with both Cathy and Gary."

Penters told Boulden in early 2000 that plaintiff was making progress in her interpersonal skills. By summer 2000, plaintiff had no problems with anyone at Steinhafel's. She and Luling were on very good terms.

In a performance evaluation of the employees in his district in 2000, Penters rated plaintiff's performance higher than West's in each quarter. Penters rated both plaintiff and West as having the potential to be promoted one level up.

### C. West's Work History and Performance Record

West has a business degree, with an emphasis in marketing. Defendant hired West in March 1995 as territory manager 1. He was promoted in May 1997 to territory manager 2, which required him to move from Bloomington, Indiana, to Milwaukee, Wisconsin. Penters gave West an evaluation rating of "far exceeds" in 1997 and a rating of "commendable" in 1998, 1999 and 2000. In spring 1998, Boulden believed that West exhibited a "lack of maturity" and had "seasoning that he had to grow into." In December 1999, Penters indicated on West's evaluation that he could be promoted "one level up." Defendant gave West a 5% raise in 1998, 4.29% in 1999 and 2.74% in 2000. West told Penters that he was willing to move anywhere in the country to be promoted. On his relocation chart, West marked 19 out of 20 locations as his first choice. He told Boulden on numerous occasions that he wanted to be promoted and was willing to move anywhere.

### D. Events After Summer 2000

When West received the promotion, defendant realigned the sales territories in Wisconsin. Defendant took plaintiff off the Steinhafel's and Bedtimes accounts and gave her American TV instead, which had been assigned previously to West. No promotion or raise accompanied plaintiff's change. Steinhafel was angry that plaintiff was leaving his account and thought defendant's decision was bad for his company. He believed that Steinhafel's relationship with plaintiff had grown and that she was doing a good job. Steinhafel conveyed his feelings to either Penters or Boulden but was told that the decision had already been made.

When plaintiff asked Penters why she did not receive the promotion in Chicago, Penters responded, "You have a family and you have kids. You're not going to Chicago."

In plaintiff's evaluation in August 2000, Penters wrote that "Tracey has had another good year. She has transitioned the issues with Steinhafel's very well and overcome merchandising issues." He also wrote, "She needs to further refine and develop her relationship building skills." In the employee comments section, plain-

tiff wrote, "I did not obtain (once again) key account status in 2000 because of gender discrimination."

After Boulden was informed of plaintiff's comments, he called her on August 28, 2000, to discuss her concerns. Plaintiff told Boulden she was willing to move in order to be promoted. When Boulden asked her why she had not indicated a willingness to move on her relocation chart, plaintiff responded that Penters had not told her how to complete the form. After the discussion, Boulden decided to promote plaintiff to key account manager. On September 26, 2000, plaintiff was given the option of receiving a key account manager territory in Madison or Chicago. She chose Madison.

### E. Statements Made by Penters

At district meetings, when plaintiff made a comment, Penters would make statements such as, "Oh, she's just a woman," "That's a woman thing" or "You're being blond again today." Penters made comments like these at every district meeting, which occurred once a month. After plaintiff was married in 1999, Penters asked plaintiff why she did not work for her husband. Penters also said, "Jerry [plaintiff's husband] is making good money and that should be enough."

## OPINION

### A. Title VII

Title VII prohibits employers from discriminating against employees "because of" their race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(a)(1). Plaintiff contends that defendant discriminated against her on the basis of sex when it promoted a male employee, Steve West, instead of her in summer 2000. Plaintiff may prove her claim directly by presenting evidence that sex was the determining factor in defendant's decision or indirectly using the burden-shifting method of proof set forth in McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1397 (7th Cir.1997). Both parties agree that plaintiff's claim is properly analyzed under the burden-shifting method.

### 1. Prima facie case

Under the McDonnell Douglas framework, plaintiff must first satisfy a four-part test to demonstrate a prima facie case of sex discrimination. Specifically, plaintiff must show that (1) she is a member of a protected class; (2) she applied and was qualified for an available position; (3) defendant did not give her the promotion; and (4) defendant gave the promotion to a person not in the protected class. Millbrook v. IBP, Inc., 280 F.3d 1169, 1174 (7th Cir.2002) (applying McDonnell Douglas in failure to promote case). This burden "is not onerous." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

If plaintiff establishes a prima facie case, the burden of production shifts to defendant to articulate a non-discriminatory reason for failing to promote plaintiff. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If defendant can articulate a non-discriminatory reason, the burden shifts back to plaintiff to show that defendant's articulated reason is a pretext for discrimination. Id. at 143, 120 S.Ct. 2097.

There is no dispute that plaintiff is a member of a protected class, that she did not receive the promotion and that the defendant gave the promotion to a male. The issue is whether plaintiff applied for the key account manager position and was qualified for it at the time she was passed over.

## a. Application for position

■ Although plaintiff did not apply for the key account manager position, no one else did either because there was no formal application process. Rather, defendant apparently filled the position without notifying its employees that the position was open, taking applications or conducting interviews. In such a case, a plaintiff must show only that "had the employer approached her, she would have accepted the offered position." *Loyd v. Phillips Brothers, Inc.*, 25 F.3d 518, 523 (7th Cir. 1994).

■ It is undisputed that plaintiff told Penters that she wanted to become a key account manager. (It is disputed whether she also expressed this interest to Boulden.) Nevertheless, defendant contends that plaintiff fails this part of the test because she indicated on her relocation chart an unwillingness to move in order to be promoted and the promotion would have required her to move to Chicago. The parties disagree about why plaintiff filled out the chart the way she did. (Plaintiff alleges that she limited her relocation choices because Penters did not properly explain to her that she could pick as many as she wanted.) This disagreement need not be resolved, however, because it is undisputed that plaintiff picked Chicago as her "first choice" on the relocation chart. Thus, there is evidence both that plaintiff wanted to be a key account manager and that she was willing to relocate to Chicago. It would be reasonable to infer from this that plaintiff would have accepted the position if defendant had offered it to her. *See Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir.2002) (on motion for summary judgment, court must draw all reasonable inferences in favor of non-moving party).

## b. Qualifications for position

■ Defendant argues next that plaintiff was not qualified to be a key account manager at the time the Chicago position became available. According to the key account manager position description, the primary prerequisite for the job was three years' experience as a territory manager 2. Plaintiff had been a territory manager 2 for five years when she was rejected. Further, the duties of the key account manager are similar to that of a territory manager 2, which defendant concedes plaintiff was performing adequately. Nevertheless, defendant contends that Boulden had doubts about plaintiff's interpersonal skills because one of plaintiff's major clients, Gary Steinhafel, had told Boulden in spring 1999 that plaintiff had not developed an effective working relationship with Steinhafel's buyer, Cathy Luling. However, the Court of Appeals for the Seventh Circuit has held that a plaintiff does not have to present proof that it met the employer's "subjective qualifications" in order to establish a prima facie case. *Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132 (7th Cir.1985). "Subjective qualifications" include the employer's evaluation of the employee's interpersonal skills. *Id.* at 133. The court reasoned that "forcing the plaintiff at the outset to prove subjective qualifications subverts the indirect method of proof by requiring, in turn, proof of the subjective standards and motives of the employer." *Id.* at 135; *see also Burrus v. United Telephone Co.*, 683 F.2d 339, 342 (10th Cir.1982) (stating that considering employer's subjective criteria in context of prima facie case would be "at odds with the mandate of *McDonnell Douglas*" because it could prevent plaintiff from showing employer's reasons are pretextual). Rather, a defendant's subjective reasons for taking adverse employment actions are more appropriately considered in the context of showing pretext. Because inter-

personal skills are the only qualification that defendant claims plaintiff lacked, I conclude that plaintiff has established a prima facie case of sex discrimination.

2. *Articulated nondiscriminatory reasons and showing of pretext*

█ Defendant's articulated reasons for offering the promotion to West rather than plaintiff substantially overlap with its arguments regarding plaintiff's prima facie case: (1) Boulden believed that plaintiff did not want the position because it would have required her to move from Madison to Chicago; and (2) plaintiff was not qualified for the position because she needed to develop her interpersonal skills. To defeat defendant's motion for summary judgment, plaintiff must adduce evidence from which a reasonable jury could infer that *both* reasons are a pretext for discrimination. *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 601 (7th Cir.2001). To do this, plaintiff may present evidence that defendant's explanations (1) had no basis in fact; (2) did not actually motivate the decision; or (3) were insufficient to motivate the decision. *Grayson v. O'Neill*, 308 F.3d 808, 820 (7th Cir.2002). Generally, the jury is permitted to infer discriminatory intent from an employer's false explanation. *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097 ("[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."); *see also O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002) (stating that plaintiff "may establish pretext with evidence that the defendants were more likely than not motivated by a discriminatory reason or that their explanations are not worthy of credence").

a. Unwillingness to relocate

█ With respect to Boulden's perception that plaintiff was not willing to relocate, defendant concedes that Boulden relied solely on the relocation chart to come to this conclusion. However, as noted above, plaintiff identified "Chicago" as her "first choice" for relocation on the chart, which is where the promotion was located. Defendant notes that the chart did not contain a column for Madison and, therefore, defendant argues, Boulden interpreted plaintiff's chart as wanting to stay where she was because Madison is located in the Chicago district.

The court of appeals has noted often that to show pretext, a plaintiff must do more than demonstrate that an employer's reasons are "mistaken, ill considered or foolish." *Jordan v. Summers*, 205 F.3d 337, 343, (7th Cir.2000). However, in this case, defendant is asserting that no reasonable jury could find that defendant's first reason was pretextual, even though defendant admittedly ignored the literal meaning of plaintiff's relocation chart and chose a more strained interpretation without attempting to clarify with plaintiff what she intended. Under defendant's view, there was no way that plaintiff could have communicated on her chart that she was willing to transfer to Chicago. Furthermore, it is undisputed that plaintiff also identified "Arizona" as a "first choice," which should have communicated to Boulden that plaintiff was willing to move.

Defendant faults plaintiff for failing to tell Boulden specifically that she was willing to relocate. However, there is no evidence that employees at Sealy were expected to communicate orally their willingness to relocate for a promotion. In the absence of statements that an employee did not want to be transferred, one would assume that a decision maker would follow the preferences of the employee as expressed in the relocation chart. Particularly because it is undisputed that plaintiff did not have notice

that defendant was considering candidates for the Chicago position, I cannot conclude that plaintiff was required to tell Boulden personally that she wanted to move to Chicago. Rather, I conclude that plaintiff has raised a genuine issue of material fact whether defendant is asserting its belief that plaintiff would not relocate as a pretext for discrimination.

b. Lack of interpersonal skills

■ In arguing that Boulden believed that plaintiff needed to develop her interpersonal skills before she could be promoted, defendant points to a conversation that Boulden had with Steinhafel, who told Boulden that plaintiff and Steinhafel's buyer, Cathy Luling, did not have an effective relationship and that the Steinhafel's salespeople were not "warming up" to plaintiff. (Defendant also proposed a fact that he had received complaints about plaintiff's interaction with "plant personnel" in Batavia, Illinois. However, defendant does not identify when this occurred or what the content of the complaints were and it does not argue seriously in its brief that the complaints affected Boulden's decision not to promote plaintiff, so I have not considered that proposed fact.) Plaintiff disputes that she had any problems with Luling and alleges that it was Penters, not plaintiff, that Luling did not like.

Regardless whether plaintiff did or did not have difficulties with the Steinhafel's buyer, it is undisputed that Steinhafel expressed concerns to Boulden that plaintiff did not have a good relationship with Luling. Defendant's belief does not have to be accurate, only honest. *Helland v. South Bend Community School Corp.*, 93 F.3d 327, 330 (7th Cir.1996). At the same time, there is evidence that by the time Boulden had made his decision regarding the Chicago position, Steinhafel had told Boulden that plaintiff was no longer experiencing any problems relating to his staff. It also undisputed that Penters told Boulden in early 2000 that plaintiff's interpersonal skills had improved.

Defendant's explanation is also called into question by Boulden's decision to promote plaintiff only two months after she was rejected for the Chicago position. Almost immediately after learning of plaintiff's accusation of discrimination, Boulden decided that plaintiff was ready to be a key account manager. This is true even though there is no evidence that Boulden had changed his mind about plaintiff's interpersonal skills, suggesting that plaintiff's interpersonal skills may not have been the reason for rejecting plaintiff in summer 2000.

■ Finally, missing from the proposed findings of fact is any evidence that Boulden relied on his perception regarding plaintiff's interpersonal skills at the time he made his decision. It is undisputed that defendant never seriously considered plaintiff for the Chicago position, which undermines defendant's assertion that Boulden contemplated her interpersonal skills. When Boulden discussed plaintiff's failure to get the promotion with her, he referred only to his belief that she had not wanted to relocate. "[W]hen an employer gives one reason at the time of the adverse employment decision but later gives another which is unsupported by documentary evidence, a jury could reasonably conclude that the new reason is a pretextual, after-the-fact justification." *O'Neal*, 293 F.3d at 1005–06

In fact, the only evidence of defendant's reason for not promoting plaintiff at the time of the decision is an undisputed statement by Penters, "You have a family and you have kids." (Defendant objects to this statement on the ground that it is hearsay because plaintiff cites only her own deposition to support it. However, because Penters is an agent of defendant and was making a statement on a matter within the

context of his employment, the statement is not hearsay. *See* Fed.R.Evid. 801(d)(2)(D)). This statement could be interpreted reasonably to mean that because plaintiff is female, her primary responsibility should be her family and her promotion opportunities were limited as a result. *See Sheehan v. Donlen*, 173 F.3d 1039, 1045 (7th Cir.1999) (statement of "Hopefully this will give you some time to spend at home with your children" made by plaintiff's boss before firing her supported jury's finding of intentional discrimination).

▮ It is also undisputed that Penters made statements to plaintiff, such as, "She's just a woman" and that he told her because her husband made "good money ... that should be enough." Defendant challenges the relevance of these statements because it was Boulden not Penters who made the choice to promote West instead of plaintiff. (Although plaintiff alleges that Penters had the *authority* to promote her, it is undisputed that it was Boulden who made the decision in her case.)

Defendant cites *Biolchini v. General Electric Co.*, 167 F.3d 1151, 1154 (7th Cir. 1999), in which the court held that the plaintiff could not show that he was meeting his employer's legitimate expectations because it had received complaints about the plaintiff's management style from other employees. Although the plaintiff argued that the other employees were biased, the court stated that the plaintiff had "not presented any evidence indicating that ... this bias carried over into [defendant]'s appraisal of the issues contained in the disciplinary letter." *Id.* at 1154. In this case, however, the alleged discriminatory statements were not made by coworkers but by plaintiff's supervisor. It is undisputed that Penters was involved in the decision making process and that Boulden relied on Penters's recommendations for promotions because Boulden had little direct contract with sales representatives. "[I]f a plaintiff can show that the attitudes of the person who made the remarks tainted the decision maker's judgment, the remarks can be relevant to prove discrimination." *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1122 (7th Cir.1998); *see also Russell v. Board of Trustees of University of Illinois*, 243 F.3d 336, 342 (7th Cir.2001) (supervisor's discriminatory comments were relevant when supervisor participated in committee decision to discipline plaintiff). The facts show that Penters did not recommend plaintiff for the Chicago promotion and that Boulden's decision might have been different if Penters had made the recommendation. A reasonable jury could find that Penters harbored discriminatory animus against plaintiff based on sex and that this bias tainted Boulden's decision.

Defendant also argues that Penters's statements are not relevant because it is undisputed that Penters was plaintiff's "biggest booster." Although it is true that Penters had recommended plaintiff to be promoted in the past, again, it is undisputed that Penters did not recommend plaintiff for the Chicago position. Evidence of Penters's past support for plaintiff is certainly relevant, but it is not dispositive. *Cf. Reeves*, 530 U.S. at 153, 120 S.Ct. 2097 (holding that defendant was not entitled to judgment as matter of law on age discrimination claim simply because defendant employed many managers over age of 50); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 745 (7th Cir.1999) (fact that same decision maker hired and fired plaintiff "is not itself evidence of nondiscrimination").

▮ Defendant articulates no other nondiscriminatory reason for failing to promote plaintiff. (In its proposed findings of fact, defendant alleges that Boulden believed "that [plaintiff]'s territory

was not large enough or complex enough to allow her to be promoted to" key account manager. Dft.'s Prop. Find. of Fact, dkt. # 41, at ¶ 90. However, defendant never develops this argument in its brief. "Arguments not developed in any meaningful way are waived." *Central States, Southeast & Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir.1999). Further, it is undisputed that "complexity" was not included in the key account manager job description and that plaintiff had no notice that it was a consideration. *See Mozee v. American Commercial Marine Service Co.*, 940 F.2d 1036, 1045 (7th Cir.1991) (when qualifications are not posted, "the use of hindsight to construct 'qualifications' for a position must be viewed with some suspicion"). Finally, defendant does not contend that West's territory was more "complex" than plaintiff's and thus provided a reason for making him more suitable for promotion.)

Although defendant argues that West was qualified and thus entitled to the position, it does not contend that West was *more* qualified than plaintiff except with regard to plaintiff's alleged lack of interpersonal skills. Defendant is correct that it had the "right to choose among even equally qualified candidates," but it does not follow that defendant can prevail on summary judgment simply by showing that the candidate it chose was qualified for the job. First, there is evidence that plaintiff was more qualified than West: she had more experience than West and had received more favorable performance evaluations. Regardless, even if West and plaintiff were equally qualified, if West's gender was the tiebreaker, defendant has violated the law. *See Nanda v. Board of Trustees of University of Illinois*, 303 F.3d 817, 829 (7th Cir.2002) (stating that inference of discrimination arises from disparate treatment of two *equally qualified* employees). Plaintiff has adduced suffi-

cient evidence to permit a reasonable jury to find that defendant's reasons for not promoting plaintiff are pretexts for discrimination. Defendant's motion for summary judgment will be denied with respect to plaintiff's claim under Title VII.

### B. *Equal Pay Act*

To establish a prima facie case for a violation of the Equal Pay Act, plaintiff must show that: (1) different wages are paid to male employees; (2) she and the male employees do equal work that requires equal skill, effort and responsibility; and (3) they have similar working conditions. *Markel v. Board of Regents of the University of Wisconsin System*, 276 F.3d 906, 912–13 (7th Cir.2002).

Plaintiff has not established a prima facie case. With regard to the first element, in her proposed findings of fact, plaintiff lists the names of about two dozen men and alleges that each "worked at the level of [key account manager] and/or [territory manager 2] during at least part of the time [plaintiff] worked at a [key account manager] level" and that "[a]ll of the comparable males earned more in wages than she did." Plt.'s Prop. Find. of Fact, dkt. # 51, at ¶¶ 198–99. However, plaintiff has not indicated what the difference in pay is or established how she knows that there is pay difference. Under Fed. R.Civ.P. 56(e), affidavits must "be made on personal knowledge." Plaintiff cites only her own affidavit for her belief that male employees are paid more than she is, yet she does not explain how she knows this information. Accordingly, plaintiff cannot rely on her affidavit to create a genuine issue of fact whether she received unequal pay. *See Watson v. Lithonia Lighting*, 304 F.3d 749, 751–52 (7th Cir.2002) (holding that employee failed to create issue of fact regarding other employee's job tasks when she "does not explain how she

learned this or offer evidence from anyone with personal knowledge").

Moreover, to support the second part of her prima facie case, plaintiff does little more than restate the test. She alleges that she and the male employees "did equal work that required equal skill, effort and responsibility." Plt.s Prop. Find. of Fact, dkt. # 51 at ¶ 200. However, plaintiff has proposed no specific facts supporting her allegation that their jobs were equal. Rule 56(e) provides that the non-moving party "must set forth specific facts which show that there is a genuine issue for trial." *See also Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.") Even if plaintiff had the same job titles as the male employees, it is the actual performance and not the titles that must be compared. *Markel,* 276 F.3d at 913. Because plaintiff has failed to establish a prima facie case, defendant's motion for summary judgment will be granted with respect to plaintiff's claim under the Equal Pay Act.

### ORDER

IT IS ORDERED that

1. Plaintiff Tracey Lust's motion to strike defendant Sealy, Inc.'s motion for summary judgment is DENIED.

2. Defendant's motion for summary judgment is GRANTED with respect to plaintiff's claim under the Equal Pay Act.

3. Defendant's motion for summary judgment is DENIED with respect to plaintiff's claim under Title VII of the Civil Rights Act of 1964.