Filed 12/3/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RAYMOND E. HORNE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, DISTRICT COUNCIL 16,<br><br>        Defendant and Respondent. | A135470<br><br>(Alameda County<br>Super. Ct. No. RG10534651) |

The trial court granted summary judgment to respondent District Council 16 International Union of Painters and Allied Trades on appellant Raymond E. Horne's employment discrimination action. Horne appeals, contending inter alia that the after-acquired evidence doctrine precluded consideration of evidence of the impact of his prior conviction on the issue of his qualification for a union organizer position. The council seeks sanctions from Horne for filing a frivolous appeal. We deny the request for sanctions and affirm the judgment.

## I. FACTS

District Council 16 International Union of Painters and Allied Trades ("council") is a group of 16 local unions of drywall finishers, glaziers, painters, and floor coverers. One member union is Glaziers Local No. 718. Raymond E. Horne—an African-American male—was a glazier and a member of that glazier's union. Since 2004, he served as a member of the executive board of his union. Since 2006, he was an officer of that union. He also served as a member of the council for many years.

1

The council employs more than 40 people in California. In 2009, Horne applied for an organizer position with the council, without success. The man chosen to fill the position was white. In February 2010, Horne again applied for an organizer position with the council. He was not hired and the position was again filed by a white male.

In July 2010, Horne challenged the council's February 2010 decision not to hire him. A hearing was conducted before the council, which found that its officials had not violated its bylaws. Horne also filed a complaint for racial discrimination with the state Department of Fair Housing and Employment. In August 2010, he received a right-to-sue letter from the department.

In September 2010, Horne filed an employment discrimination action, alleging that the council's failure to hire him was based on his race. In January 2011, he filed his first amended complaint in this matter.

During discovery, Horne admitted that he had been convicted of possession of narcotics for sale in April 1997, that he had served a prison term for that conviction, and that he was paroled after that term of imprisonment on May 30, 2003. Horne denied that his citizenship rights, which were revoked as a result of this conviction, had not been fully restored. His right to vote had been restored since he was paroled in May 2003, but Horne admitted that he did not possess the right to carry a firearm. The council did not know these facts at the time of the February 2010 failure to hire.

In August and September 2011, knowing these facts, the council demanded that Horne dismiss his lawsuit. It asserted that federal law barred him from employment as an organizer because of his prior narcotics conviction. (See 29 U.S.C. § 504(a).) Horne did not know of this federal statute until that time. He disputed the council's claim that the statute rendered him ineligible for that position.

In September 2011, the council moved for summary judgment, arguing that undisputed facts established that Horne was unqualified for the position he sought. It also asked the trial court to take judicial notice of November 2011 and January 2012 letters from the U.S. Department of Labor, Office of Labor-Management Standards (OLMS), asserting that federal law rendered Horne ineligible for the position. A "fact

2

sheet" issued by OLMS explaining its interpretation of the statutory prohibition in general terms was attached to one of the letters. Opposing the motion for summary judgment, Horne objected to the proffered evidence of his prior conviction, asserting that the council could not rely on evidence obtained after its failure to hire to justify its employment decision. He also objected to any consideration of the proffered OLMS evidence.

After the hearing, the trial court granted the council's motion for summary judgment. It found that Horne was unable to establish a prima facie case of discrimination because he did not show that he was qualified for the job for which he applied. It relied on evidence that at the time of the employment decision in 2010, federal law prohibited him from serving as a union organizer. It found that the 13-year-disability period established by that federal statute had not been shortened—that is, his citizenship rights had not been fully restored—because he did not have a right to carry a firearm. In so doing, it necessarily rejected Horne's objections to the evidence of his prior conviction and the OLMS evidence—evidence that was acquired by the council after the time it declined to hire him. In April 2012, Horne's case was dismissed.

## II. AFTER-ACQUIRED EVIDENCE DOCTRINE

In his key contention on appeal, Horne asserts that the after-acquired evidence doctrine precluded the trial court from considering the council's proffered evidence of his disqualification for the position. The council counters that this evidence was admissible and precluded Horne from establishing a prima facie case of racial discrimination.

Horne necessarily contends that the trial court erred in granting summary judgment to the council on his causes of action for failure to hire. He alleged in his complaint that the council's decision not to hire him was racially motivated. (See Gov. Code, § 12940, subd. (a).) In California, the Fair Employment and Housing Act (FEHA) makes it unlawful for an employer to refuse to hire an applicant for this reason. (*Ibid*.; *Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 148 (*Sada*).) Although Horne alleged a cause of action for discrimination in violation of state law, the similar purposes and objectives of the FEHA and title VII of the federal Civil Rights Act

3

of 1964 allow California courts to look to pertinent federal precedent when applying our state law. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*); *Sada, supra,* 56 Cal.App.4th at p. 148; see 42 U.S.C. § 2000e-2(a)(1); Gov. Code, § 12940, subd. (a).)

California has adopted the three-stage burden-shifting approach established by the United States Supreme Court for trying these types of discrimination claims. (*Guz, supra,* 24 Cal.4th at p. 354; *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159; see *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 252-260 (*Burdine*); *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-805 (*McDonnell*).) Horne bears the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence. (*Sada, supra,* 56 Cal.App.4th at p. 151; see *Burdine, supra,* 450 U.S. at pp. 252-253; *McDonnell, supra,* 411 U.S. at p. 802; *Guz, supra,* 24 Cal.4th at p. 354; *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 806 (*Horn*).) If he does so, then the burden shifts to the council to offer any legitimate, non-discriminatory reasons for failing to hire him. The trial court then assesses whether the proffered reasons might be pretextual. (See *St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 508, 515; *Burdine, supra,* 450 U.S. at p. 256; *Guz, supra,* 24 Cal.4th at pp. 355-356; *Horn, supra,* 72 Cal.App.4th at p. 806; see also Code Civ. Proc., § 437c, subd. (c).)

Before getting to the issue of the council's motive, Horne must first establish his prima facie case. In a failure-to-hire case, the applicant must show inter alia that he or she was qualified for the position. (*Sada, supra,* 56 Cal.App.4th at p. 149; see *Burdine, supra,* 450 U.S. at pp. 253-254, fn. 6, 258; *McDonnell, supra,* 411 U.S. at p. 802; *Guz, supra,* 24 Cal.4th at p. 355.) The adequacy of his prima facie case is initially a question of law for the trial court to resolve. (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 201-202.) The trial court found that he did not establish this prima facie case. On appeal, we consider anew whether he did so. (See *Guz, supra,* 24 Cal.4th at p. 334; *Horn, supra,* 72 Cal.App.4th at p. 807.)

We conclude that Horne did not establish a prima facie case of racial discrimination because the undisputed evidence shows that he was unqualified for the organizer position for which he was not hired. Federal law bars any person convicted of

4

a violation of narcotics law from serving as a labor organizer. (Tit. 29, U.S.C. § 504(a)(2).) Horne was not hired for a labor organizer position. In February 2010, the council was unaware that he had suffered two prior convictions, one of which was for felony possession of narcotics for sale. At trial, the council offered his later admission that he had suffered this criminal conviction and documentary evidence from OLMS in support of its contention that Horne was unqualified for the position and, thus, could not state a prima facie case of discrimination.

Horne objects, asserting that neither the trial court nor our court may consider this evidence of ineligibility because it did not come to light until after February 2010 when the council decided not to hire him. The after-acquired evidence doctrine precludes consideration of evidence bearing on the employer's motive that was unknown to the employer before the decision not to hire was made. (*McKennon v. Nashville Banner Publishing Co.* (1995) 513 U.S. 352, 359-360.) The reasoning behind this rule focuses on the employer's motive: an employer could not have been motivated not to hire a job applicant based on information that it did not have at the time of the employment decision. Unless the information was known to the employer at that time, it cannot bear on the issue of whether the decision not to hire the applicant was based on a non-discriminatory reason. (*McKennon v. Nashville Banner Publishing Co., supra,* 513 U.S. at p. 360.)

The after-acquired evidence doctrine applies to bar consideration of Horne's criminal record and the federal law rendering him ineligible for the organizer position if the issue is the council's motive for not hiring him in February 2010. (See *Finegan v. County of Los Angeles* (2001) 91 Cal.App.4th 1, 11.) This doctrine renders the proffered evidence inadmissible on the second aspect of the three-part employment decision inquiry on which the council bore the burden of proof—its *motive* in deciding not to hire Horne. But the council's motive in declining to hire Horne is not at issue unless he first establishes a *prima facie case* of racial discrimination, including evidence that he was *qualified* for the organizer position.

Horne's burden of establishing a prima facie case was quite minimal. (See *Burdine, supra,* 450 U.S. at p. 253; *Wills v. Superior Court, supra,* 195 Cal.App.4th at p. 159.) On that threshold inquiry, we conclude that evidence bearing on his statutory disqualification from a union organizing position was not barred by the after-acquired evidence doctrine. When the issue before the trial court is not employer motive but applicant qualification, evidence that the applicant was disqualified as a matter of law at the time of the employment decision is relevant, *whenever* the employer acquired that information. (*Finegan v. County of Los Angeles, supra,* 91 Cal.App.4th at pp. 8-13; see also *Green v. State of California* (2007) 42 Cal.4th 254, 260-262 [FEHA plaintiff must prove qualification to show employment discrimination].) The council was entitled to present evidence rebutting Horne's claim that he was qualified for the position, even if that evidence would not have been admissible on its reasons for its decision not to hire him. (See *Finegan v. County of Los Angeles, supra,* 91 Cal.App.4th at pp. 11-12.)[1] We are satisfied that the trial court properly considered the evidence of Horne's prior conviction and the OLMS. (See *Finegan v. County of Los Angeles, supra,* 91 Cal.App.4th at pp. 8-13.)[2]

The council's motion for summary judgment put the issue of Horne's qualifications before the trial court. Its evidence that he was disqualified for the organizer position as a matter of law negated an essential element of his prima facie case of racial discrimination. (See *Wills v. Superior Court, supra,* 195 Cal.App.4th at p. 160.) In these circumstances, the council was entitled to summary judgment as a matter of law. (See *Guz, supra,* 24 Cal.4th at p. 334; *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612; see also Code Civ. Proc., § 437c, subd. (c).)

### III. QUALIFICATION

---

[1] We acknowledge that at least one federal court has rejected this distinction. (*O'Neal v. City of New Albany* (7th Cir. 2002) 293 F.3d 998, 1003.) We find the reasoning of *Finegan* to be more persuasive.

[2] In light of this conclusion, we necessarily reject Horne's related contention that the trial court erred by not sustaining his objections to this evidence.

Alternatively, Horne contends that the trial court's judgment must be reversed because he established that he was qualified for the position. He argues that his civil rights have been restored within the meaning of title 29, section 504 of the United States Code even though he is not entitled to possess a firearm.

On appeal from a dismissal after an order granting summary judgment, we conduct an independent review of the facts before the trial court. (*Guz, supra,* 24 Cal.4th at p. 334; *Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 563; *Kelly v. First Astri Corp.* (1999) 72 Cal.App.4th 462, 469-470.) We exercise our independent judgment about the legal effect of the facts. (See *Federal Deposit Ins. Corp. v. Superior Court* (1997) 54 Cal.App.4th 337, 345.) We determine whether the council—as the party seeking summary judgment—has conclusively negated a necessary element of Horne's case, such that it is entitled to summary judgment as a matter of law. (See *Guz, supra,* 24 Cal.4th at p. 334; *Artiglio v. Corning Inc., supra,* 18 Cal.4th at p. 612; see also Code Civ. Proc., § 437c, subd. (c).)

Horne concedes that he did not have the right to possess a firearm because he was a convicted felon. The trial court found that this disability flowing from his criminal conviction meant that his civil rights had not been fully restored, and thus, that he was not qualified for the union organizer position. However, Horne contends that even if the evidence of his prior conviction was properly before the trial court, that conviction did not bar him from holding the organizer position under federal law. (Tit. 29 U.S.C. § 504.)

Typically, one convicted of a barring offense is ineligible for employment as a union organizer for 13 years, unless his or her citizenship rights have been "fully restored. . . ." (Tit. 29 U.S.C. § 504(a).)[3] The OLMS takes the view that Horne's civil

_____

[3] In some contexts, a felon's citizenship rights are considered restored if he or she has the right to vote, to sit on a jury, and to hold public office. (*United States v. Andaverde* (9th Cir. 1995) 64 F.3d 1305, 1309.) As the federal statute applicable to Horne's case requires the *full* restoration of the citizenship rights and the *Andaverde* statute does not, we do not view that case as persuasive to the issue before us. (Compare tit. 29, § 504(a) with tit. 18, § 922(g)(1).)

rights have not been fully restored because he cannot possess a firearm.[4]  Although not binding, we give some deference to an agency interpretation of the meaning and legal effect of a statute that it is charged to enforce.  The agency's interpretation is more persuasive than binding, as we undertake to fulfill our judicial duty to interpret statutory law.  Our acceptance of the agency interpretation of the statute turns on those factors that support or undermine that statutory construction.  (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7.)

Horne argues that because the right to possess a firearm is not a right expressly provided by the California Constitution, his inability to lawfully possess a firearm does not deprive him of his full civil rights.  (See *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481.)  We disagree.  The most reasonable interpretation of the federal law precluding his union organizer employment until his civil rights have been *fully* restored is that he must have reacquired all of the civil rights he had before his conviction, including the statutory right to possess firearms.  (See tit. 29, § 504(a).)  Applying the express language of that federal statute, we conclude that Horne's civil rights were not fully restored at the time of the February 2010 employment decision because he could not then possess a firearm.  As such, he was not qualified for the organizer position, he cannot show a prima facie case of racial discrimination, and the trial court properly granted summary judgment to the council and it properly dismissed Horne's employment discrimination action.

## IV.  SANCTIONS

The council requests that we award attorney fees and costs on appeal as sanctions for bringing a frivolous appeal.  An appeal is frivolous when it is disputably without merit—when any reasonable attorney would agree that the appeal is totally and

---

[4] While we take judicial notice of the OLMS letters and fact sheet as public records, we do not accept the truth of the statements contained therein.  The truthfulness and proper interpretation of the statements in that document are subject to dispute.  (See *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375; *Love v. Wolf* (1964) 226 Cal.App.2d 378, 403.)  We conclude that the agency takes a certain view of the meaning of its enabling statute, but our legal conclusion of that matter—not that of the agency—is what is determinative of the issues in this appeal.

completely meritless. (*Computer Prepared Accounts, Inc.* v. *Katz* (1991) 235 Cal.App.3d 428, 434-435.) Having considered the issue presented on appeal, we find that a reasonable attorney could find some merit in Horne's argument. (See fn. 1, *ante*.) As the appeal was not frivolous, we deny the motion to dismiss this appeal.

The motion for sanctions is denied.

## V. DISPOSITION

The judgment is affirmed. The council, as the prevailing party on appeal, is entitled to recover its costs on appeal. (California Rules of Court, rule 8.278.)

_____
REARDON, J.

We concur:

_____
RUVOLO, P. J.

Humes, J., Dissenting


The majority concludes that it is perfectly lawful for an employer to intentionally discriminate against a job applicant on the basis of race when the employer uncovers—long after the discrimination occurred—a reason why the applicant was disqualified for the job. I disagree with this conclusion and respectfully dissent. I believe that such an employer is and should be accountable under the law, especially when the applicant, as in this case, did not misrepresent any job qualification. I would conclude that Horne is entitled to have his claim heard even though his available remedies may be limited.

I begin by accepting much of the majority's decision. I agree that failure-to-hire claims based on a theory of disparate treatment, such as Horne's claim, are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*). (See also *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 662; *Ibarbia v. Regents of University of California* (1987) 191 Cal.App.3d 1318, 1327-1328 (*Ibarbia*).) I also agree that plaintiffs must typically show that they were qualified for the job to satisfy their initial burden of establishing a prima facie case of discrimination under this framework.[1] (*McDonnell Douglas*, at p. 802; *Clark*, at p. 663.) Finally, I agree that title 29 of United States Code section 504 (section 504) disqualified Horne from holding a union-organizer job at the time of his application because his full civil rights had not been restored as a result of his felony conviction and ensuing firearms restriction. Nonetheless, I would conclude that this disqualification does not prevent Horne from satisfying his initial burden under

---

[1] Qualification for the position is sometimes also an essential element of the claim itself, such as in a claim of disability discrimination under the Fair Employment and Housing Act (FEHA). (See *Green v. State of California* (2007) 42 Cal.4th 254, 262, 264 [the FEHA does not protect those people with disabilities "who are not qualified, even with reasonable accommodation, to perform essential job duties" based on language of Gov. Code, § 12940, subd. (a)(1)].) In contrast, qualification for the position is *not* an essential element of Horne's claim of race discrimination. (See Gov. Code, § 12940, subd. (b).)

1

*McDonnell Douglas* because the disqualification played no part in the council's decision to reject him for the position.

The purpose of the prima facie case is to require the plaintiff to show, when there is no direct evidence of discriminatory intent, " 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the [applicable statute]." [Citation.]' " (*Ibarbia*, *supra*, 191 Cal.App.3d at pp. 1327-1328; see *Green v. State of California*, *supra*, 42 Cal.4th at p. 275.)  The prima facie case, however, "is not intended to be an inflexible rule." (*Ibarbia*, at p. 1327; see also *U.S. Postal Service Bd. of Governors v. Aikens* (1983) 460 U.S. 711, 715 ["The prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic' "].)  " 'The facts necessarily will vary in [employment discrimination] cases, and the specification . . . of the prima facie proof . . . is not necessarily applicable in every respect to differing factual situations.' " (*Ibarbia*, at p. 1327 [quoting *McDonnell Douglas*, *supra*, 411 U.S. at p. 802, fn. 13].)[2]  After all, the point of the prima facie case is to screen out unworthy cases, not to screen out worthy ones.

Horne's inability to show that he was qualified for the job does not necessarily defeat his claim for race discrimination at the prima facie stage because Horne can still establish an inference that the council's intent was discriminatory since the council was unaware of his disqualification when his application was rejected.  (See *Teamsters v. United States* (1977) 431 U.S. 324, 358, fn. 44 [to establish prima facie case when bringing failure-to-hire claim, a plaintiff must "demonstrate at least that his rejection did

---

[2] Flexibility in applying the prima facie case requirements is routine in certain failure-to-hire cases.  For example, one prima facie element requires a showing that the position remained open and the employer continued to seek applicants.  But this requirement "has not been applied strictly in tenure cases" because candidates must serve for several years before they are qualified for tenure, and open positions are not always immediately filled. (*Clark v. Claremont University Center*, *supra*, 6 Cal.App.4th at pp. 639, 663, fn. 5; see also *Lyons v. England* (9th Cir. 2002) 307 F.3d 1092, 1114 [discussing other situations in which plaintiffs may be excused from establishing they applied for or were qualified for the position sought].)

not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought"].)

The conclusion that Horne can establish an inference that the council's intent was discriminatory, notwithstanding his now-known disqualification, is compelled in part by *McKennon v. Nashville Banner Publishing Co.* (1995) 513 U.S. 352 (*McKennon*). In *McKennon*, the United States Supreme Court considered whether an employee who alleged she was unlawfully terminated in violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 et seq.) was "barred from all relief when, after her discharge, the employer discover[ed] evidence of wrongdoing that, in any event, would have led to the employee's termination on lawful and legitimate grounds." (*Id.* at p. 354.) For purposes of its motion for summary judgment, the employer conceded it had discriminated against the employee, but it argued that it would have fired her anyway upon learning she had wrongfully copied confidential documents. (*Id.* at p. 355.) The Court rejected the argument. It reasoned that because the employer was unaware of the misconduct until after it fired the employee, "[t]he employer could not have been motivated by knowledge it did not have and it [could not] now claim that the employee was fired for the nondiscriminatory reason." (*Id.* at p. 360.) The Court held that the after-acquired evidence of misconduct did not negate the employer's discriminatory intent and therefore did not defeat the employee's claim. (See *ibid.*)

*McKennon, supra*, 513 U.S. 352 was a wrongful-termination case, not a failure-to-hire case, but that is a distinction of little logical consequence here. *McKennon*'s basic principle—that after-acquired evidence playing no role in an employer's adverse employment decision has no bearing on whether the employer acted with discriminatory intent—is equally applicable in failure-to-hire cases, including at the prima facie stage where the issue is whether the plaintiff can establish an inference of discriminatory intent. In the case before us, Horne was denied the job for reasons that are unknown but that do not include his disqualification. Accordingly, we cannot rule out the possibility that the

3

denial was for unlawful discriminatory reasons, and he should not be blocked at this stage of the case from trying to prove he was discriminated against.

The closest failure-to-hire case on point is *O'Neal v. City of New Albany* (7th Cir. 2002) 293 F.3d 998 (*O'Neal*).  In *O'Neal*, the plaintiff claimed he was rejected for a position as a police officer because of his race.  In granting summary judgment, the trial court held that he was unable to satisfy the prima facie requirement that he was qualified for the job because a state statute barred applicants who were plaintiff's age or older from becoming police officers.  (*Id.* at p. 1003.)  The facts, however, revealed that the statutory age limit played no actual part in the hiring decision because the employer believed at the time that under federal law it could not enforce the age requirement.  It was only later that the employer learned that the age requirement was valid.  (*Id.* at p. 1004.)

In reversing summary judgment and allowing the plaintiff's case to proceed, the Seventh Circuit cited *McKennon, supra*, 513 U.S. 352 in holding that "[a]n employer may still be liable for race discrimination under [t]itle VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.] even though it later discovers information that would have otherwise disqualified the plaintiff from employment."  (*O'Neal*, *supra*, 293 F.3d at p. 1003.)  The court held that the employer's "belated recognition that [it] could not have hired [the plaintiff] because of his age" did not bar the race discrimination claims—even though, as here, that information established the applicant's statutory disqualification from the position sought.  (*Id.* at p. 1004.)  *O'Neal*'s rationale is persuasive and squarely applicable to Horne's case.

The same rationale was applied in *Norris v. City and County of San Francisco* (9th Cir. 1990) 900 F.2d 1326 (*Norris*), a pre-*McKennon* case in which an applicant alleged that he was denied a job because of race discrimination.  As did *O'Neal*, *supra*, 293 F.3d 998, *Norris* makes the point that information about the applicant's qualifications unknown to the employer at the time of the job denial has no bearing on determining whether discrimination occurred:  "Clearly, information about [the applicant] unknown to the [the employer] at the time the decision was made could not have entered into the

calculus of the decision and would be entirely irrelevant. Such after-acquired data cannot explain [the employer's] decision not to hire [the applicant]." (*Id.* at p. 1331.)

In holding that Horne cannot make out a prima facie case of discrimination because of after-acquired evidence of his disqualification, the majority relies on *Finegan v. County of Los Angeles* (2001) 91 Cal.App.4th 1 (*Finegan*). But in my view this reliance is misplaced. In *Finegan*, an employee alleged that he was wrongfully terminated because of a disability, and expert medical testimony was offered at trial to rebut the showing that the employee "was otherwise qualified to do his job." (*Id.* at pp. 4, 7.) In determining that the expert's testimony was admissible, *Finegan* concluded that *McKennon, supra,* 513 U.S. 352 was inapplicable because the testimony was offered to prove that there were reasons supporting the employer's decision to terminate the employee at the time he was terminated—not to provide "cover for an otherwise unlawful decision." (*Id.* at p. 13.)

*Finegan*'s unremarkable holding is that the after-acquired-evidence doctrine is inapplicable to an expert's opinion interpreting evidence that was known at the time of the adverse employment decision. The court's characterization of the expert's medical opinion as "later-acquired" evidence (*Finegan, supra,* 91 Cal.App.4th at pp. 9, 12) is thus not a reference to the kind of after-acquired evidence with which we are concerned here—new evidence that was unknown when the adverse employment action was taken. Moreover, whether the *Finegan* plaintiff was "otherwise qualified" was an element of both his prima facie case and his substantive claim for disability discrimination. (See fn. 1, *ante*.) Thus, even if the expert evidence had been "after-acquired" within the meaning of *McKennon*, *supra*, 513 U.S. 532, it would nonetheless have been admissible because it went to a core issue of the plaintiff's substantive claim having nothing to with intent: whether the plaintiff was, in fact, "otherwise qualified" and thus protected by the FEHA.

Also not particularly helpful to resolving the case before us are decisions involving after-acquired evidence that applicants or employees falsified their job qualifications. Courts of appeal have come to different, and often fact-based, results

5

when considering whether equitable principles—such as the unclean-hands doctrine—prevent employees from pursuing wrongful-termination claims when the employer later discovers that the employee misrepresented his or her qualifications in order to get the job.[3]  (See, e.g., *Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833, 842, 845, 849 [holding that harassment claims of plaintiff who lied about her immigration status to obtain job could go forward and would serve the FEHA's purposes, but indicating in dicta that any wrongful-termination claims would be barred]; *Camp v. Jeffers, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 626, 636, 638-639 [barring wrongful-termination and retaliation claims where plaintiffs misrepresented that they had never been convicted of a felony]; *Cooper v. Rykoff-Sexton, Inc.* (1994) 24 Cal.App.4th 614, 617-619 ["declin[ing] to adopt a blanket rule that material falsification of an employment application is a complete defense" to wrongful-discrimination claims because "the purpose and effect of the antidiscrimination statutes are unacceptably undermined by a principle that would allow a fact that played no part in the firing decision to bar any recovery"].)  These cases have little bearing on Horne's case because, unlike the plaintiffs in those cases, Horne engaged in no misconduct and made no misrepresentations about his qualifications.

Disallowing claims such as Horne's thwarts the policies behind the laws at issue in this case.  It undercuts section 504 by encouraging employers to be unaware of the section's requirements and to ignore applicant screening.  More importantly, it undermines the public policy against employment discrimination embodied in the FEHA.  Although we now know that Horne was ineligible to hold the union-organizer job because of section 504, the FEHA not only aims to "restore aggrieved persons to the position they would have occupied had the discrimination not occurred," but also,

---

[3] A case currently pending before our Supreme Court will address whether an employee who alleges disability discrimination in not being recalled after a layoff should be disallowed from pursuing his claim because after-acquired evidence shows that he submitted a false social security number when he was originally hired.  (*Salas v. Sierra Chemical Co.* (2011) 198 Cal.App.4th 29, review granted and depublished Nov. 16, 2011, S196568.)

6

"separate and apart from its compensatory purpose, . . . 'to provide effective remedies that will . . . prevent and deter unlawful employment practices.' [Citation.] This forward-looking goal of preventing and deterring unlawful discrimination goes beyond the tort-like objective of compensating an aggrieved person for the effects of any wrongs done in an individual case. It is rooted in the Legislature's express recognition that employment discrimination 'foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interests of employees, employers, and the public in general.' " (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 225 (*Harris*).) If Horne can prove that the council, not knowing of his disqualification, discriminated against him, the resulting public harm deserves judicial redress.

While I believe that the law extends to Horne the opportunity to prove his case, I also recognize that his statutory disqualification from the job may significantly limit his potential remedies and might prevent him from recovering damages. (See *McKennon*, *supra*, 513 U.S. at pp. 361-362 [after-acquired evidence of employee's misconduct that would have led to lawful termination if employer had known of it admissible to limit remedies, including reinstatement and back pay]; *Harris*, *supra*, 56 Cal.4th at pp. 232-233 [where discrimination played role in but was not but-for cause of employee's termination, plaintiff not entitled to reinstatement, back pay, or noneconomic damages]; but see *O'Neal*, *supra*, 293 F.3d at pp. 1004-1005 [indicating that failure-to-hire plaintiff might be entitled to back pay and noneconomic damages even where state statute "would have ultimately voided his hiring"].) But regardless whether damages would be awarded, Horne's case should be allowed to proceed because "the unavailability of damages . . . does not make a finding of unlawful discrimination an empty gesture." (*Harris,* at p. 234.) Rather, "a judicial declaration of employer wrongdoing," "injunctive relief where appropriate to stop discriminatory practices," and " 'reasonable attorney's fees and costs' " are all available remedies and protect the FEHA's objectives. (*Id.* at pp. 234-235.) If Horne is able to prove that he was discriminated against, he should not be categorically excluded from seeking any available relief.

7

Employers normally ask job applicants to disclose facts that would bar their employment from the position they are seeking.  If an applicant tells the truth, the employer knows about any disqualifying condition, and the rejected applicant will be unable to establish a prima facie case of a discriminatory failure to hire.  If the applicant is untruthful, equitable principles may bar the applicant's claims.  But a rule that blocks truthful applicants from pursuing claims of race discrimination because of after-acquired evidence of a disqualification contravenes the FEHA and undermines its objectives.  I would therefore reverse the grant of summary judgment and remand to the trial court for further proceedings.

_____
Humes, J.

8

Trial Court:                    Alameda County Superior Court


Trial Judge:                    Hon. Marshall Whitley


Counsel for Appellant:          Burton Employment Law
                                Jocelyn Burton


Counsel for Respondents:        Weinberg Roger & Rosenfeld
                                Jannah Vanessa Manansala